UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE NATERA PRENATAL TESTING LITIGATION

Case No. 22-cv-00985-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 31

Before the Court is Defendant Natera, Inc.'s motion to dismiss and strike class allegations. ECF No. 31. The Court will grant the motion in part and deny it in part.

**I.    BACKGROUND**

Plaintiffs Amanda Davis, Lisa Cassinis, Lillian Delaurie, Laura Ashley Heryla, Sara Martinez, Yelena Kreynstein, and Amanda Law bring this action against Natera, representing themselves, a nationwide class, and six state subclasses.[1]

For purposes of the present motion, the Court accepts the following facts as true. Natera markets and sells Panorama, a noninvasive prenatal testing ("NIPT") product which screens for an array of fetal chromosomal and genetic conditions. NIPTs are screening tests, not diagnostic tests; while an NIPT can screen patients for a "high risk" of the presence of a particular fetal condition, a patient who receives a positive NIPT result should follow up with diagnostic testing to confirm the presence of that condition. NIPTs offer some advantages over traditional diagnostic tests:

---

[1] Plaintiffs bring suit on behalf of a nationwide class of "all persons who purchase[d] for personal use Natera's NIPT testing services within the United States." ECF No. 18 ¶ 137. Plaintiffs also bring suit on behalf of six state subclasses, defined as "all persons who purchased for personal use Natera's NIPT testing services within" California, Ohio, Maryland, Illinois, New Jersey, and Florida. *Id.* ¶¶ 138-143.

NIPTs require only a blood draw and can be done earlier in a pregnancy. Diagnostic tests, though more accurate than NIPTs, are also more invasive, are associated with a risk of miscarriage, and must be conducted later in the pregnancy term. In 2020, the American College of Obstetricians and Gynecologists ("ACOG") changed its guidance to recommend that all pregnant persons "be offered both screening and diagnostic testing options." *Id.* ¶ 27.

Natera's Panorama brochure for consumers[2] advertises "fewer false positives and fewer false negatives." *Id.* ¶ 40. The brochure states that Panorama offers patients the ability to "[d]iscover more about your baby's health" and includes a testimonial from a patient "now planning a birth at a regular maternity ward instead of closer to the children's hospital thanks to this painless test!" *Id.* ¶ 73. Natera's website describes Panorama as "the most reliable way of non-invasively assessing a baby's health," having been tested with "the largest prospective NIPT study" with outcomes of "~90% samples with genetic truth." *Id.* ¶¶ 36-37. The website explains that a "high risk" finding for a particular condition "indicates a very high probability that your baby may have [the] condition." *Id.* ¶ 38 (alteration in original and emphasis omitted). The website highlights Panorama's positive predictive value ("PPV") for Down syndrome of over 90% and describes Panorama as "[n]on-invasive and highly accurate, . . . identif[ying] more than 99% of pregnancies affected with Down syndrome [with] the lowest reported false positive rate of any prenatal screening test for the commonly screened chromosomal abnormalities: [Down syndrome], trisomy 18, and trisomy 13." *Id.* ¶¶ 39, 42.

In fact, Panorama's accuracy varies widely across conditions. While Panorama is very effective in screening for Down syndrome, it is much less effective in screening for rare genetic conditions, including those caused by microdeletions. The PPV – the likelihood that a positive Panorama result for a particular condition is accurate, such that the fetus actually has that

---

[2] Plaintiffs do not attach this brochure to the consolidated class action complaint, which instead links to the consumer brochure posted on Natera's website. The brochure currently available at that website appears markedly different from the one described in the complaint. For example, the current brochure prominently lists the positive predictive values of several of the conditions for which Panorama screens. For the purposes of deciding the present motion, the Court relies on Plaintiffs' allegations regarding the contents of the prior version of the brochure.

2

condition – for rare conditions is far lower than Panorama's advertised PPV for Down syndrome. Natera knew, but did not disclose, that Panorama has a high rate of false positives for microdeletion-related and other rare conditions. In 2016, Natera acknowledged the results of a published study which found that Panorama had an 18% PPV for DiGeorge syndrome, a rare genetic condition. *Id.* ¶ 47. In other words, 82% of Panorama's positive results for DiGeorge syndrome were false positives. Panorama's PPVs for other rare conditions – which similarly were not disclosed in marketing materials – are as low as 2-5%, such that up to 98% of positive results for those conditions are false positives.

Despite the significant difference in Panorama's accuracy across different conditions, Natera "advertises Panorama as reliable overall, prominently emphasizing the accuracy rates of the tests for more common conditions like Down [s]yndrome [which] Panorama can reasonably detect." *Id.* ¶ 50. Natera's brochure for consumers does not include any information about PPV rates, and the website lists only the PPV for Down syndrome. Plaintiffs allege that Natera's marketing misleads consumers regarding Panorama's accuracy, falsely implies that Panorama can replace more invasive diagnostic testing, and falsely suggests that Panorama has been externally validated.

Plaintiffs were each exposed to some Panorama marketing materials: Davis, Cassinis, Heryla, Delaurie, Law, and Kreynstein reviewed the Panorama brochure before purchasing the product; Law additionally reviewed "marketing materials on [Natera's] website" before purchase; Kreynstein reviewed unspecified additional "marketing materials" before purchase; and Martinez "encountered descriptions of the product" before purchase, then "reviewed . . . [the] brochure with her test results." *Id.* ¶¶ 81, 88, 96, 103, 111, 121, 130.

Plaintiffs each paid for Panorama: Davis paid $100 out of pocket; Cassinis and Kreynstein paid around $200; Heryla paid over $700; and Martinez, Delaurie, and Law paid an unspecified amount. *Id.* ¶¶ 86, 94, 101, 109, 119, 127, 133. Each named plaintiff, "[h]ad she been aware that [Panorama] is inaccurate and unreliable . . . would not have purchased it, or would have paid significantly less for it." *Id.* ¶¶ 87, 95, 102, 110, 120, 129, 135.

Plaintiffs all received Panorama results requiring further evaluation: Davis received an

1    "atypical" "[s]uspected finding outside the scope of the test, which may include, but is not limited
2    to, fetal mosaicism, fetal chromosome abnormality [or] maternal chromosome abnormality";
3    Cassinis, Heryla, Delaurie, and Law each received findings of "high risk for serous genetic
4    conditions, including triploidy and trisomy 13"; Martinez received an "atypical finding on sex
5    chromosomes, including potential Turner Syndrome"; and Kreynstein received a finding of "high
6    risk for DiGeorge syndrome." *Id.* ¶¶ 82, 89, 97, 104, 112, 123, 131.  Each subsequently
7    underwent subsequent monitoring by medical specialists or invasive diagnostic testing, incurring
8    additional expenses. *Id.* ¶¶ 84, 92, 99, 107, 117, 126, 134.  Each of their Panorama results turned
9    out to be a false positive; none of the fetuses had the conditions Panorama identified.

10    Plaintiffs bring claims for (1) violation of the California Unfair Competition Law ("UCL"),
11   California Business and Professions Code §§ 17200, *et seq.*; (2) violation of California's False
12   Advertising Law ("FAL"), California Business and Professions Code § 17500, *et seq.*; (3)
13   violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750,
14   *et seq.*; (4) violation of the California Song-Beverly Consumer Warranty Act, California Civil
15   Code § 1790, *et seq.*; (5) violation of the Maryland Consumer Protection Act ("MCPA"),
16   Maryland Code Commercial Law § 13-101, *et seq.*; (6) violation of the Illinois Consumer Fraud
17   and Deceptive Business Practices Act ("ICFDBPA"), 815 Illinois Compiled Statutes § 505/1, *et
18   seq.*; (7) violation of the Florida Deceptive and Unfair Practices Act ("FDUPA"), Florida Statutes
19   §§ 501.201, *et seq.*; (8) violation of the New Jersey Consumer Fraud Act ("NJCFA"), New Jersey
20   Revised Statutes §§ 56:8-1, *et seq.*; (9) fraudulent concealment; (10) breach of implied warranty;
21   and (11) unjust enrichment.

22   **II.   JURISDICTION**

23   This Court has jurisdiction under 28 U.S.C. § 1332(d)(2).

24   **III.  LEGAL STANDARD**

25   "Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the
26   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
27   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint must
28   contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

4

Fed. R. Civ. P. 8(a)(2). Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 568 (N.D. Cal. 2013) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

IV. **REQUEST FOR JUDICIAL NOTICE**

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Judicial notice and incorporation by reference are exceptions to this rule. *Id.* The Ninth Circuit has cautioned against the "overuse and improper application" of these exceptions and warned that the "use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.*

Natera requests that the Court take judicial notice of 17 different documents, including a *New York Times* article; a published correction to that article; two different patient brochures for the Panorama product; pages and other materials from Natera's website; a sample Panorama screening result; Natera's response to the *New York Times* article; portions of a publication by the

5

Hastings Center; an October 2020 ACOG practice bulletin; an April 19, 2022 FDA Safety Communication; an abstract titled, "Clinical Experience with Single-Nucleotide Polymorphism-based Non-invasive Prenatal Screening for 22q11.2 Deletion Syndrome"; a study titled, "A National Referral Laboratory's Experience with the Implementation of SNP-Based Non-invasive Prenatal Screening for Fetal Aneuploidy and Select Microdeletion Syndromes"; a study titled, "Clinical Experience with a Single-Nucleotide Polymorphism-based Non-invasive Prenatal Test for Five Clinically Significant Microdeletions"; a study titled, "Expanding the Scope of Noninvasive Prenatal Testing: Detection of Fetal Microdeletion Syndromes"; and an abstract titled "Multicenter Prospective Study of SNP-based cfDNA for 22q11.2 Deletion in 18,289 Pregnancies with Genetic Confirmation." ECF No. 31-1.

Because the Court did not consider these materials in reaching the conclusions set forth below, Natera's request for judicial notice is denied as moot. *See Norton v. LVNV Funding, LLC*, 396 F. Supp. 3d 901, 909 (N.D. Cal. 2019); *Henricks v. Cal. Pub. Utils. Comm'n*, No. 17-CV-2177-MMA (MDD), 2018 WL 2287346, at *4 (S.D. Cal. May 18, 2018).

## V. DISCUSSION

### A. Motion to Dismiss

Natera moves to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

#### 1. Applicable Pleading Standard

Natera argues that all of Plaintiffs' claims sound in fraud and that the whole of Plaintiffs' complaint is therefore subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Even where fraud is not a necessary element of a claim, where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [a] claim," "th[at] claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

6

1103-04 (9th Cir. 2003)).

Plaintiffs concede that Rule 9(b) applies to the majority of their claims, but argue it does not apply to their warranty claims and UCL unlawful and unfair conduct claims. Most of Plaintiffs' claims – including their UCL unfair conduct claims and their UCL unlawful conduct claims predicated on violations of the CLRA and the Sherman Law – are based on a single course of conduct: Natera's allegedly fraudulent omissions regarding Panorama's accuracy and reliability as a prenatal screening product.[3] Such claims sound in fraud and must satisfy Rule 9(b). Plaintiffs also allege that Natera violated the Song-Beverly Act and the implied warranty of merchantability by selling defective consumer goods. These warranty claims do not rely on Natera's fraudulent omissions, so the claims do not sound in fraud. Similarly, because Plaintiffs' UCL unlawful conduct claim is predicated on the alleged violation of the Song-Beverly Act, that claim does not sound in fraud.

### 2. Particularity

Natera moves to dismiss the complaint for failure to plead fraud with particularity, as required by Rule 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Natera argues that Plaintiffs' fraudulent omission claims fail because Plaintiffs do not identify any misrepresentations that they saw or relied upon, as required by Rule 9(b). Plaintiffs argue that fraudulent omission claims need not be pleaded with the level of particularity typically required by Rule 9(b). This is true of Plaintiffs' pure omission claims, which are based on

---

[3] Plaintiffs allege that Natera violated the unfair prong of the UCL by "knowingly selling inaccurate and unreliable NIPT tests, making misleading and deceptive claims regarding its NIPT tests, and failing to disclose the complete truth regarding its NIPT tests to consumers and their treating physicians" and engaging in conduct that violates California public policy. ECF No. 18 ¶¶ 158-59. Plaintiffs further allege that Natera violated the unlawful prong of the UCL based on predicate violations of the CLRA and the Sherman Food, Drug, and Cosmetic Law, California Health and Safety Code §§ 109875, *et seq.*, which prohibits the sale of misbranded drugs and devices.

7

Natera's alleged omission of material facts regarding Panorama's high rate of false positives. *See MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (explaining that pure omission claims "can succeed without the same level of specificity required by a normal fraud claim" because a plaintiff "will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim"). But Plaintiffs also allege that certain of the statements Natera made in its marketing materials were misleading by omission; such partial misrepresentation claims are subject to the typical requirements of Rule 9(b). *See Tabler v. Panera LLC*, No. 19-cv-01646-LHK, 2019 WL 5579529, at *11 (N.D. Cal. Oct. 29, 2019) ("Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue . . . regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions.") (quoting *Kearns*, 567 F.3d at 1126); *Anderson*, 500 F. Supp. 3d at 1019 ("[I]n a partial representation case, the plaintiff *will* 'be able to specify the time, place, and specific content of an omission' . . . because what is misleading about a partial representation is that the affirmative representation is not accompanied by the omitted information.") (emphasis in original) (quoting *MacDonald*, 37 F. Supp. 3d at 1096).

To comply with Rule 9(b), Plaintiffs must plead specific facts about the partial representations they challenge as misleading. *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'"). "[C]ourts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon." *Tabler*, 2019 WL 5579529, at *12. Where a plaintiff proceeds on a partial misrepresentation theory of fraudulent omission, they must identify the misleading representations on which they relied in purchasing the product. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (affirming dismissal where plaintiff "failed to specify which sales material he relied upon in making his decision to buy" the product); *Anderson*, 500 F. Supp. 3d at 1019 (dismissing partial misrepresentation claims where plaintiffs "failed to spell out when they encountered these statements, where they did so, [] how it affected them . . . [or] if they encountered them")

8

(emphasis omitted); *Tabler,* 2019 WL 5579529, at *12 (dismissing where plaintiff identified a series of misleading advertisements and alleged she "saw, relied upon, and reasonably believed" them, but "provide[d] no indication of which statements, if any, [she] herself relied on before purchasing" the product); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing where plaintiff "fail[ed] to provide the particulars of her own experience reviewing or relying upon any of those statements" because she did not "specify when she was exposed to the statements or which ones she found material to her decisions to purchase" the products); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (dismissing where plaintiffs "identif[ied] a range of statements" as misleading, but did not specify "which statements any of them saw or relied on in deciding to buy" the product).

To plead their partial misrepresentation claims with particularity, Plaintiffs must identify the allegedly misleading representations that each of them saw and relied upon in deciding to purchase Panorama. Plaintiffs have not done so. The complaint alleges that Davis, Cassinis, Heryla, Delaurie, Law, and Kreynstein "reviewed" the consumer brochure before purchasing the product, while Martinez only "encountered" unspecified "descriptions of the product" before purchase, then "reviewed . . . [the] brochure with her test results." ECF No. 18 ¶¶ 81, 88, 96, 103, 111, 121, 130. Of the six Plaintiffs who reviewed the brochure before purchase, none is alleged to have relied on any of the allegedly misleading statements in the brochure in choosing to purchase Panorama.[4] The complaint also identifies several statements made in other marketing materials as misleading, *see* ECF No. 18 ¶¶ 164, 176, 189, 213, 228, 241, 254, but does not allege that any

---

[4] The complaint alleges that, "[h]ad [each Plaintiff] been aware that the [Panorama] test is inaccurate and unreliable, [she] would not have purchased it, or would have paid significantly less for it." ECF No. 18 ¶¶ 87, 95, 110, 120, 129, 135. These allegations are sufficient to plead reliance for pure omission claims. *Daniel*, 806 F.3d at 1225 ("A plaintiff may [prove reliance on an omission] by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'") (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). However, these allegations are not sufficient to plead reliance for partial misrepresentation claims. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) ("[A] plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct."); *Anderson*, 500 F. Supp. at 1005 ("The theory behind requiring actual reliance is that a consumer's injury cannot be 'fairly traceable' to the defendant's alleged misrepresentation unless that consumer actually relied on that misrepresentation.").

9

Plaintiff actually saw these statements before purchasing Panorama.[5]  Because none of the Plaintiffs is alleged to have seen these statements, they cannot have relied on them.  *See Anderson*, 500 F. Supp. at 1019 ("A plaintiff who never sees the partial misrepresentation has not been misled.").

The Court will dismiss Plaintiffs' claims based on partial misrepresentations for failure to comply with Rule 9(b).[6]  These claims are dismissed with leave to amend.

### 3. Learned Intermediary Doctrine

Natera argues that the learned intermediary doctrine applies to Plaintiffs' fraud-based claims, such that "any disclosure obligations on Natera's part ran solely to Plaintiffs' medical providers."  ECF No. 31 at 27.  Plaintiffs argue that this doctrine – developed in the prescription drug context – should not apply to blood tests like Panorama, which "carr[y] no analogous medical risk to the pregnant patient."  ECF No. 47 at 24.

Under California law, failure-to-warn claims brought in products liability actions are subject to the learned intermediary doctrine, which holds that a manufacturer of prescription drugs or certain medical devices satisfies its duty to warn by providing adequate warning to the prescribing physician, rather than the patient.  *Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1116 (1996) ("[I]n the case of prescription drugs, the duty to warn runs to the physician, not to the patient.") (emphasis omitted); *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1483 (1999) ("In the case of prescription drugs and implants, the physician stands in the shoes of the 'ordinary user' . . . the duty to warn in these cases runs to the physician, not the patient."); *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 319-320 (2017) (declining to apply learned intermediary doctrine to medical device operated by patient outside medical environment).  Some federal courts have applied the doctrine to consumer protection claims where such claims are based on a failure-to-

---

[5] The complaint alleges that Law reviewed unspecified "marketing materials on [Natera's] website" before purchase, while Kreynstein reviewed other "marketing materials" and Martinez "encountered descriptions of the product" before purchase.  ECF No. 18 ¶¶ 121, 130, 96.

[6] Because the Court dismisses Plaintiffs' claims based on partial representations, it does not address whether those representations are actionable statements or would mislead a reasonable consumer.

10

warn theory. *See, e.g.*, *Saavedra v. Eli Lilly & Co.*, No. 12-cv-9366-SVW-MAN, 2013 WL 3148923, at *3-4 (C.D. Cal. June 13, 2013) (applying doctrine to CLRA, FAL, and UCL claims concerning a drug label which failed to warn consumers of withdrawal effects because, "[i]f the doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such as violation of the [state law consumer protection act] or a claim for misrepresentation, then the doctrine would be rendered meaningless") (alterations in original) (quoting *In re Norplant Contraceptive Products Liab. Litig.,* 955 F. Supp. 700, 709 (E.D. Tex. 1997), *aff'd sub nom. In re Norplant Contraceptive Products Litig.*, 165 F.3d 374 (5th Cir. 1999)); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1144 (S.D. Cal. 2016) (applying doctrine to CLRA, FAL, and UCL claims concerning physician-prescribed home testing kits because "it appears that the misrepresentations and omissions claims are based on a failure to warn of the [product's] discrepant results").

The Court is not persuaded that the learned intermediary doctrine should apply to Plaintiffs' California consumer fraud claims. Natera cites no cases in which California courts have applied this doctrine to consumer protection claims. The two federal district courts that have applied the learned intermediary doctrine to consumer protection claims based its application on the similarities between the claims before them and products liability failure-to-warn claims. Assuming for the sake of argument that, under California law, the learned intermediary doctrine should apply to Plaintiffs' consumer protection claims, Natera does not articulate why this Court should understand Plaintiffs' claims as "essentially" failure-to-warn claims. *See Saavedra*, 2013 WL 3148923, at *3. Plaintiffs do not suggest that Panorama posed any undisclosed safety risk to patients. *See Brown v. Super. Ct.*, 44 Cal. 3d 1049, 1065 (1988) ("A product may be defective because of the absence of a warning that was necessary to allow its safe use."). Rather, Plaintiffs allege that Natera failed to disclose that Panorama could not reliably screen for many of the conditions for which it was advertised. Because Plaintiffs' claims are not simply disguised failure-to-warn claims, the learned intermediary doctrine should not apply to Plaintiffs' California consumer protection claims.

The Court is similarly not persuaded that the learned intermediary doctrine is properly

applied to Plaintiffs' MCPA, ICFDBPA, or FDUPA claims.[7] Natera cites *Morris v. Biomet, Inc.* to support the application of the learned intermediary doctrine to Plaintiffs' MCPA claims. 491 F. Supp. 3d 87, 104 (D. Md. 2020). But *Morris* concerned a products liability action brought against the manufacturer of a hip implant used during surgery, and Natera offers no authority to suggest that Maryland law applies the learned intermediary doctrine to claims brought under the MCPA. Natera similarly cites *Grzanecki v. Smith and Nephew, Inc.* to support the application of the learned intermediary doctrine to Plaintiffs' ICFDBPA claims. No. 18-cv-00204, 2019 WL 2297452, at *2 (N.D. Ill. May 30, 2019). But *Grzanecki* concerned failure-to-warn products liability claims, and Natera offers no authority to suggest that Illinois law applies the learned intermediary doctrine to ICFDBPA claims at all, let alone ICFDBPA claims not based on a failure-to-warn theory. Finally, Natera cites *Beale v. Biomet, Inc.* to support the application of the learned intermediary doctrine to Plaintiffs' FDUPA claims. 492 F. Supp. 2d 1360, 1372-73 (S.D. Fla. 2007). In *Beale*, the court applied the learned intermediary doctrine to the plaintiffs' FDUPA deceptive advertising claims because "the claims are all ultimately based upon Biomet's alleged failure to warn of the risks of the device." 492 F. Supp. 2d at 1373. The present case does not concern disguised failure-to-warn claims, and Natera provides no authority indicating that Florida law extends the learned intermediary doctrine to FDUPA claims beyond that context. Absent such authority, the Court will not apply the learned intermediary doctrine to Plaintiffs' MCPA, ICFDBPA, and FDUPA claims.

### 4. Duty to Disclose

Natera argues that Plaintiffs fail to sufficiently allege that Natera owed them any duty to disclose the omitted facts. The majority of the parties' briefing focuses on the duty to disclose under California's consumer protection statutes and common law.

Plaintiffs plead claims for violations of California's FAL, CLRA, UCL, as well as common law fraudulent concealment, on a theory of fraud by omission. Under California law, "to be actionable[,] the omission must be contrary to a representation actually made by the defendant,

---

[7] Natera cites no cases to suggest the learned intermediary doctrine applies to Plaintiffs' NJCFA claims.

or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis omitted) (quoting *Daugherty*, 144 Cal. App. 4th at 835). In *Hodsdon*, the Ninth Circuit – synthesizing recent decisions of the California Courts of Appeal – explained that a plaintiff sufficiently pleads a duty to disclose where: (1) the plaintiff alleges the omission was material; (2) the alleged defect was central to the product's function; and (3) the defendant (a) is plaintiff's fiduciary, (b) has "exclusive knowledge" of material facts, (c) "actively conceals" a material fact, or (d) makes misleading partial representations. *Id.* at 863 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).[8] "The last *Limandri* factor is applicable to a partial, not pure, omission claim." *Anderson*, 500 F. Supp. 3d at 1014.

Plaintiffs argue that they need not "identify a 'defect' in [Natera's] NIPT tests, given that Plaintiffs allege that the tests are falsely advertised, as opposed to defective." ECF No. 47 at 30. But Plaintiffs cite no authority suggesting that the nature of a plaintiff's theory of consumer fraud alters the pleading requirements for establishing a duty to disclose omitted facts. *Hodsdon* itself was a false advertising case brought under the FAL, UCL, and CLRA, challenging the undisclosed presence of child and slave labor in the supply chain; the Ninth Circuit rejected the existence of any duty to disclose because "the labor practices in question . . . are not physical defects that affect the central function of the chocolate products." 891 F.3d at 860.[9] Courts apply the same *Hodsdon* factors to common law fraudulent concealment claims. *See, e.g.*, *Ahern v. Apple Inc.*, 411 F.

---

[8] In certain cases, a consumer may also be able to establish a duty to disclose where "the undisclosed information 'caused an unreasonable safety hazard.'" *Hodsdon*, 891 F.3d at 861 (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012)).

[9] The *Hodsdon* opinion repeatedly references the absence of an alleged "physical defect" in the product. *See, e.g.*, 891 F.3d at 860 ("In the absence of any affirmative misrepresentations . . . , the manufacturers do not have a duty to disclose the labor practices in question . . . because they are not physical defects that affect the central function of the chocolate products."); *id.* at 864 ("[T]he alleged lack of disclosure . . . is not a physical defect at all, much less one related to the chocolate's function as chocolate."). It is not clear whether, post-*Hodsdon*, a duty to disclose arises only where the alleged omissions concern physical defects. *See, e.g.*, *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 979 (N.D. Cal. 2018) (applying *Hodsdon* physical defect requirement and finding that undisclosed software security vulnerabilities were qualifying physical defects); *In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at *9 (N.D. Cal. June 8, 2022) (finding no duty to disclose because, "even if Plaintiffs are asserting that Apple omitted information regarding its iOS updates, Apple only has a duty to disclose *physical* defects") (emphasis in original).

Supp. 3d 541, 568 (N.D. Cal. 2019); *Johnson v. Glock, Inc.*, No. 3:20-cv-08807-WHO, 2021 WL 6804234, at *5 (N.D. Cal. Sept. 22, 2021).

Thus, to establish a duty to disclose omitted facts, Plaintiffs must plead sufficient facts to support each of the *Hodsdon* requirements. The Court finds that Plaintiffs have not done so. Accordingly, the Court will dismiss Plaintiffs' omission-based UCL, FAL, CLRA, and California fraudulent concealment claims[10] with leave to amend.

Natera challenges the remainder of Plaintiffs' consumer fraud claims on the same basis. But Plaintiffs need not plead an independent duty to disclose for omission-based claims brought under the MCPA, ICFDBPA, FDUPA, or NJCFA. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015) (noting that the MCPA "imposes on the sellers of consumer goods and services the duty to disclose all material facts," such that plaintiffs need not plead an independent duty to disclose); *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 505 (1996) ("[I]t is unnecessary to plead a common law duty to disclose in order to state a valid [ICFDBPA] claim . . . based on an omission or concealment."); *Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008) ("[A] duty to disclose is not an element of [the] FDUTPA."); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (noting that, "[u]nlike omission under the NJCFA, a fraudulent omission under common law requires a duty to disclose"). Natera's motion to dismiss Plaintiffs' MCPA, ICFDBPA, FDUPA, and NJCFA claims on this

---

[10] Plaintiffs plead a cause of action for fraudulent concealment "under California law, or alternatively, Ohio law, Maryland law, Illinois law, New Jersey law, and Florida law." ECF No. 18 ¶ 264. To state the obvious, the Court cannot assess the adequacy of a claim without knowing which jurisdiction's law to apply. *Dollar Props., Inc. v. Myers Fin. Grp., Inc.*, 719 F. Supp. 734, 735 (N.D. Ill. 1989) ("To determine whether the defendants are entitled to judgment based upon the pleadings, this court must first determine which state's law applies to this case."). Moreover, "due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) (quoting *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016)). With respect to the state law claims in any future amended complaint, Plaintiffs shall identify the state under whose law the claim is brought. When a claim under the same legal theory is brought under the law of more than one state (e.g., fraudulent concealment), each state law claim shall be stated as a separate count.

For the purposes of deciding the present motion to dismiss, the Court interprets the complaint as asserting a cause of action for fraudulent concealment under California law.

basis is denied.

#### 5.  Warranty Claims

Natera argues that Plaintiffs fail to state a claim for breach of the implied warranty of merchantability because they fail to allege that Panorama was unmerchantable.[11] The implied warranty of merchantability requires that consumer goods, among other things, "are fit for the ordinary purposes for which such goods are used." Cal. Civil Code § 1791.1(a)(2). Plaintiffs allege that Panorama's unreliability rendered it "unfit for the ordinary purposes for which prenatal tests are used—accurately detecting risk for serious genetic conditions." ECF No. 18 ¶ 202. Plaintiffs plausibly allege that the basic function of a test which screens for a specified set of genetic conditions is to accurately detect the risk of such conditions, and that Panorama was unfit to do so. The Court finds that Plaintiffs have adequately pleaded the product's unmerchantability.

Natera further challenges Plaintiffs' implied warranty claims for lack of vertical privity. Under California law, "[t]he general rule is that privity of contract is required in an action for breach of . . . implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (2008) (quoting *All W. Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (1998)).

Plaintiffs contend that the privity requirement does not apply because they allege reliance on Natera's advertising, including "patient brochures and other materials." ECF No. 47 at 31. The privity exception Plaintiffs raise is not available for implied warranty claims. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (describing privity exception "when the plaintiff relies on written labels or advertisements of a manufacturer," citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)); *Burr*, 42 Cal. 2d at 696 (stating that the privity "exception[] where representations are made by means of labels or advertisements[] i[s] applicable only to express warranties"); *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853-54 (N.D.

---

[11] Plaintiffs plead a cause of action for breach of implied warranty "under California law, or alternatively, Ohio law, Maryland law, Illinois law, New Jersey law, and Florida law." ECF No. 18 ¶ 272. For the purposes of deciding the present motion to dismiss, the Court interprets the complaint as asserting a cause of action for breach of implied warranty under California law.

1    Cal. 2018) (noting that *Clemens* relies on *Burr*, which "clarifies that 'where representations are

2    made by means of labels or advertisements,' the exception to privity is 'applicable only to express

3    warranties' and not implied ones") (quoting *Burr*, 42 Cal. 2d at 696).

4          Plaintiffs additionally argue the vertical privity requirement does not apply because

5    Plaintiffs are the intended beneficiaries of the agreements between Natera and Plaintiffs'

6    physicians and health insurers.  On reply, Natera does not challenge the applicability of this

7    exception, but instead argues that Plaintiffs' allegations are "mere boilerplate" which "provide no

8    information regarding the purported agreements, their terms, or how or why Plaintiffs qualify as

9    third[-]party beneficiaries."  ECF No. 51 at 18.

10         The Ninth Circuit has not explicitly recognized the existence of an exception to the privity

11   requirement for third-party beneficiaries.  *See Clemens*, 534 F.3d at 1023 (describing exceptions to

12   privity requirements under California law and omitting the beneficiary exception).  However,

13   California appellate courts have long recognized the third-party beneficiary exception for implied

14   warranty claims.  *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978)

15   (applying exception to vertical privity requirement for intended third-party beneficiary of contract

16   between building contractor and roofing subcontractor).  There is an ongoing split in authority in

17   this district regarding whether a third-party beneficiary exception to the vertical privity

18   requirement remains available post-*Clemens*.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46

19   F. Supp. 3d 936, 984 (N.D. Cal. 2014) ("In light of *Gilbert* and the lack of a clear holding to the

20   contrary in *Clemens*, the Court concludes that the third-party beneficiary exception remains viable

21   under California law."); *Zeiger*, 304 F. Supp. 3d at 854 ("Given that *Clemens* did not directly

22   address the third-party beneficiary exception, nor did it address *Gilbert*, it need not be read to

23   foreclose the third-party beneficiary exception to privity under California law"); *Dang v. Samsung

24   Elecs. Co., Ltd.*, No. 14-cv-00530-LHK, 2018 WL 11348883, at *5 (N.D. Cal. July 2, 2018) ("As

25   Judge Orrick and Judge Chen both point out, *Clemens* did not explicitly address the third-party

26   beneficiary exception and it is unclear whether the plaintiff in *Clemens* even argued for the

27   exception's application."); *but see Quackenbush v. Am. Honda Motor Co., Inc.*, No. C 20-05599

28   WHA, 2023 WL 187491, at *3 (N.D. Cal. Jan. 13, 2023) ("As California law currently stands,

1  save and except for real estate construction cases allowing the homeowner to sue the
2  subcontractor, no third-party beneficiary exception has ever been applied in a citable decision.").
3  Having reviewed these authorities, the Court is persuaded that the broad language regarding the
4  scope of this exception in *Gilbert* – which was not directly addressed in *Clemens* – renders the
5  exception available to Plaintiffs here.  *See Gilbert*, 82 Cal. App. 3d at 69 (determining that privity
6  was not required for breach of implied warranty because "California cases permit a third party to
7  bring an action even though he is not specifically named as a beneficiary" and the plaintiff "is a
8  third-party beneficiary of the contract . . . and therefore can sue for breach of the implied
9  warranty").  Plaintiffs may maintain an action for breach of implied warranty if they qualify as
10 third-party beneficiaries.

11 Natera argues that Plaintiffs fail to sufficiently plead the nature of the agreements and
12 "how or why" they qualify as beneficiaries.  "[U]nder California law, 'a third[-]party beneficiary
13 can enforce a contract made expressly for his benefit . . . . A contract made expressly for a third
14 party's benefit does not need to specifically name the party as the beneficiary; the only
15 requirement is that the party is more than incidentally benefitted by the contract.'"  *In re Gen.*
16 *Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019) (quoting *Aberin v.*
17 *Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *7 (N.D. Cal. Mar. 26,
18 2018)).  Plaintiffs allege they "are the intended third-party beneficiaries of agreements between
19 Natera and their physicians and health insurers"; that these agreements to use Panorama "were
20 designed and intended for the benefit of Plaintiffs . . . to make health care decisions," and that
21 Natera "understood that Plaintiffs[] . . . would require that [Panorama] provide reliable and
22 accurate information regarding genetic abnormalities that may affect their pregnancy and the well-
23 being of their bab[ies]."  ECF No. 18 ¶ 276.  Plaintiffs thus plead the existence of purchase
24 agreements, the requirements of such agreements, and that these agreements were designed to
25 provide Plaintiffs with information to aid in making decisions about their pregnancies.  Plaintiffs
26 plead they are more than incidentally benefitted by these agreements.  Nothing more is required at
27 this stage.

28 Natera's motion to dismiss Plaintiffs' implied warranty claims is denied.

17

### 6. Equitable Relief

Natera argues that Plaintiffs cannot assert claims for equitable relief because "[f]ederal courts [] cannot entertain equitable claims when an adequate legal remedy exists, even when state law would permit the issuance of equitable relief." ECF No. 31 at 32-33 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)). In *Sonner*, the Ninth Circuit held that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." 971 F.3d at 841. Natera suggests that *Sonner* requires dismissal of Plaintiffs' claims for equitable relief because "Plaintiffs also seek legal remedies, including damages, under numerous counts." ECF No. 31 at 32.

This Court, together with the majority of courts in this district, understands *Sonner* to require far less at the pleading stage. *See, e.g.*, Order, *Pereda v. Gen. Motors*, No. 21-cv-06338-JST (N.D. Cal. Dec. 9, 2022), ECF No. 177 at 19 ("Because Plaintiffs adequately plead the absence of an adequate remedy at law, the Court declines to dismiss Plaintiffs' equitable claims on that basis."); *Murphy v. Olly Public Benefit Corp.*, No. 22-cv-03760-CRB, 2023 WL 210838, at *11 (N.D. Cal. Jan. 17, 2023) ("*Sonner* does not require Plaintiffs to 'demonstrate' anything at the pleadings stage. Plaintiffs alleged that legal remedies were not as certain as equitable remedies. That is sufficient.") (internal citation omitted); *Carroll v. Myriad Genetics*, No. 22-cv-00739-YGR, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) ("*Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims."); *Warren v. Whole Foods Mkt. Cal., Inc.*, No. 21-cv-04577-EMC, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) ("[The plaintiff] is not barred by *Sonner* . . . from pursuing alternative remedies at this early stage of the suit."); *Jeong v. Nexo Fin. LLC*, No. 21-cv-2392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("There is no binding precedent that holds that pleading equitable restitution in the alternative is improper."); *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-cv-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[B]ecause *Sonner* was decided at a later posture, . . . if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case."); *Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021) ("While *Sonner* recognized that a complaint seeking equitable relief

18

must 'plead the basic requisites of the issuance of equitable relief including the inadequacy of remedies at law,' nothing in *Sonner* precludes plaintiffs from doing so in the alternative to remedies at law.") (quoting *Sonner*, 971 F.3d at 844). Plaintiffs plead that they lack an adequate remedy at law. ECF No. 18 ¶¶ 168-69, 281. That is sufficient at this stage of the litigation.[12]

### B. Motion to Strike Class Claims

Natera moves to strike certain of Plaintiffs' class claims. "[A] motion to strike class claims based only on the pleadings is proper only if the court is 'convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 976 (N.D. Cal. 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, No. 10-cv-2553-RMW, 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)).

Natera first asks the Court to strike Plaintiffs' class allegations "to the extent Plaintiffs seeks to represent patients who received different tests," arguing that each Plaintiff lacks both Article III and statutory standing to represent a class whose physicians may have ordered different "particular panels" of Panorama. ECF No. 31 at 34-35. The Ninth Circuit has adopted the "class certification approach," in which "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting Newberg on Class Actions § 2:6). Under this approach, at the pleadings stage, "it is premature to consider [Plaintiffs'] ability to represent a class who purchased different products than [they] did." *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668, 672 (N.D. Cal. 2021); *see also Forsher v. Boar's Head Provisions Co., Inc.*, No. 17-cv-04974-CW, 2018 WL

---

[12] Natera additionally argues that Plaintiffs' unjust enrichment claim must be dismissed because it is duplicative of their deception-based claims, citing *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013), *reconsideration granted*, 2015 WL 5012828 (N.D. Cal. Aug. 24, 2015), and *Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2012 WL 43649 (N.D. Cal. Jan. 9, 2012). As the *Samet* court recognized in its order on reconsideration – to which Natera does not refer – subsequent Ninth Circuit law establishes that "the duplicative nature of an unjust enrichment/quasi-contract claim is not a valid reason to dismiss it." 2015 WL 5012828, at *1.

19

1   11436306, at *7 (N.D. Cal. Sept. 14, 2018) ("If the named plaintiff has individual standing to

2   bring a claim . . . [f]urther inquiry into whether the named plaintiff may represent the interests of

3   other class members is deferred to the class certification decision.") (internal citation omitted).

4   Natera also asks the Court to strike Plaintiffs' national class allegations because Plaintiffs

5   lack standing to bring claims under the laws of states in which they do not reside and were not

6   injured. This Court has previously considered whether, under the approach adopted in *Melendres*,

7   784 F.3d at 1262, nationwide class standing should be deferred until class certification. *See*

8   *Hrapoff v. Hisamitsu Am., Inc.*, No.21-cv-01943-JST, 2022 WL 2168076, at *2 (N.D. Cal. June

9   16, 2022). "The Ninth Circuit in *Melendres* acknowledges that courts have reached differing

10  conclusions on this issue, but held that 'the issue [is] better addressed as part of class

11  certification.'" *Id.* (quoting *Pecanha v. Hain Celestial Grp., Inc.*, No. 17-cv-04517-EMC, 2018

12  WL 534299, at *9 (N.D. Cal. Jan. 24, 2018)). "Although *Melendres* 'involved a dissimilarity in

13  injuries suffered,' while this case involves named plaintiffs bringing legal claims pursuant to state

14  laws for states they did not reside in, 'the distinction is not material for purposes of taking the

15  class certification approach.'" *Id.* (quoting *Pecanha*, 2018 WL 534299, at *9). The Court will not

16  dismiss the complaint for failure to establish nationwide class standing.

## CONCLUSION

The Court grants in part and denies in part Natera's motion to dismiss. Plaintiffs' fraudulent omission claims based on Natera's partial representations are dismissed with leave to amend. Plaintiffs' other omission-based UCL, FAL, CLRA, and California fraudulent concealment claims are also dismissed with leave to amend. In all other respects, Natera's motion is denied.

Leave to amend is granted solely to cure the deficiencies identified above. Any amended complaint shall be filed within 28 days of this order.

**IT IS SO ORDERED.**

Dated: March 28, 2023

_____
JON S. TIGAR
United States District Judge