**GIRARD SHARP LLP**
Dena C. Sharp (SBN 245869)
Kyle P. Quackenbush (SBN 322401)
Mikaela M. Bock (SBN 335089)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
kquackenbush@girardsharp.com
mbock@girardsharp.com

*Attorneys for Plaintiffs*

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
Julian C. Diamond (*pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
mroberts@bursor.com
jdiamond@bursor.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

|  |  |
|---|---|
| IN RE NATERA PRENATAL TESTING LITIGATION | Case No. 4:22-cv-00985-JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  August 28, 2025<br>Time:  2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ........................................................................................................... 1

II.  PROCEDURAL BACKGROUND................................................................................. 2

III. TERMS OF THE PROPOSED SETTLEMENT ........................................................... 3

   A.   Class Definition ................................................................................................... 3

   B.   Monetary Relief ................................................................................................... 4

   C.   Non-Monetary Relief ........................................................................................... 4

   D.   Release ................................................................................................................. 5

   E.   Service Awards .................................................................................................... 5

   F.   Attorneys' Fees and Expenses ............................................................................. 5

   G.   Payment of Notice and Administrative Fees ....................................................... 5

IV.  LEGAL STANDARD.................................................................................................... 6

V.   THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS OF FEDERAL RULE
     OF CIVIL PROCEDURE 23(A) AND (B)(3)................................................................ 7

   A.   Rule 23(a)(1) – Numerosity ................................................................................ 7

   B.   Rule 23(a)(2) – Commonality.............................................................................. 8

   C.   Rule 23(a)(3) – Typicality ................................................................................... 8

   D.   Rule 23(a)(4) – Adequacy ................................................................................... 9

   E.   Rule 23(b)(3) – Predominance and Superiority ................................................ 10

VI.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT
     BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE ................................... 11

   A.   The Settlement Satisfies Procedural Considerations ........................................ 11

        1.   Plaintiffs and Class Counsel Have Adequately Represented the
             Settlement Class........................................................................................ 12

        2.   The Settlement Was Negotiated at Arms' Length by Experienced
             Counsel After Discovery........................................................................... 12

   B.   The Settlement Satisfies Substantive Considerations ....................................... 13

        1.   The Costs, Risks, and Delay of Trial and Appeal..................................... 13

2.     The Settlement Amount Is Reasonable and Will Be Fairly Distributed to the Settlement Class ................................................................ 14

3.     Attorneys' Fees and Expenses ....................................................... 16

4.     Additional Agreements and Effect on Other Cases ....................................... 16

VII.    THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE ................... 16

A.    Long-Form Notice ............................................................... 17

B.    Direct Notice ................................................................... 17

C.    Publication, Media, and Internet Notice ........................................ 18

D.    Settlement Website and Toll-Free Number ....................................... 18

E.    Opt-Out and Objection Procedures ............................................. 18

F.    CAFA Notice ................................................................... 20

G.    Settlement Administration Costs ............................................... 20

H.    Proposed Schedule through Final Approval Hearing .............................. 21

VIII.   CONCLUSION ..................................................................... 22

1

**TABLE OF AUTHORITIES**

**PAGE(S)**

2

**Cases**

3

*Bailey v. Rite Aid Corp.*
    338 F.R.D. 390 (N.D. Cal. 2021) .............................................................................................. 8

4

5

*Castillo v. Bank of Am., NA*
    980 F.3d 723 (9th Cir. 2020)..................................................................................................... 8

6

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................................................... 14

7

8

*Fraley v. Batman*
    638 F. App'x 594 (9th Cir. 2016) ........................................................................................... 15

9

*Fraley v. Facebook, Inc.*
    966 F. Supp. 2d 939 (N.D. Cal. 2013) .................................................................................... 15

10

11

*Greer v. Dick's Sporting Goods, Inc.*
    2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ...................................................................... 11

12

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)............................................................................................. 8, 10

13

14

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir. 1994)....................................................................................................... 16

15

*Hawkins v. Kroger Co.*
    337 F.R.D. 518 (S.D. Cal. 2020)............................................................................................ 10

16

17

*Hefler v. Wells Fargo & Co.*
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................................... 15

18

19

*Hilsley v. Ocean Spray Cranberries, Inc.*
    2020 WL 520616 (S.D. Cal. Jan. 31, 2020).................................................................... 14, 18

20

21

*In re ConAgra Foods, Inc.*
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................................................... 11

22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
    2006 WL 1530166 (N.D. Cal. June 5, 2006) .......................................................................... 8

23

24

*In re Facebook, Inc., PPC Adver. Litig.*
    282 F.R.D. 446 (N.D. Cal. 2012)............................................................................................. 8

25

*In re Haier Freezer Consumer Litig.*
    2013 WL 2237890 (N.D. Cal. May 21, 2013) ...................................................................... 14

26

27

28

*In re Hyundai & Kia Fuel Econ. Litig.*
  926 F.3d 539 (9th Cir. 2019) ........................................................................... 7, 10

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ............................................................. 7, 10

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) ................................................................. 12, 14, 16

*In re Netflix Priv. Litig.*
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................................... 13

*In re NJOY, Inc. Consumer Class Action Litig.*
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) .................................................................. 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
  2020 WL 4212811 (N.D. Cal. July 22, 2020)
  *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ................................................. 11

*Johnson v. Triple Leaf Tea Inc.*
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ........................................................ 14

*Krommenhock v. Post Foods, LLC*
  334 F.R.D. 552 (N.D. Cal. 2020) ............................................................................ 9

*Milan v. Clif Bar & Co.*
  340 F.R.D. 591 (N.D. Cal. 2021) ............................................................................ 8

*Montera v. Premier Nutrition Corp.*
  2025 WL 751542 (N.D. Cal. Mar. 10, 2025) ........................................................ 15

*Murillo v. Pac. Gas & Elec. Co.*
  266 F.R.D. 468 (E.D. Cal. 2010) .......................................................................... 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ......................................................................... 12, 13

*Perks v. Activehours, Inc.*
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ...................................................... 17

*Ries v. Arizona Beverages USA LLC*
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................ 8

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) .................................................................................. 9

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016) .............................................................................................. 10

*Vega v. Weatherford U.S., Ltd. P'ship*
  2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ......................................................... 12

*Villalpando v. Exel Direct Inc.*
   303 F.R.D. 588 (N.D. Cal. 2014) ................................................................... 7

*Villegas v. J.P. Morgan Chase & Co.*
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............................................... 9

*Wal–Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ................................................................................. 8, 10

*Wolin v. Jaguar Land Rover N. Am., LLC*
   617 F.3d 1168 (9th Cir. 2010) ..................................................................... 11

**Statutes**

N.Y. Gen. Bus. Law § 349(h) ........................................................................ 15

**Rules**

Fed. R. of Civ. P. 23 ............................................................................. passim

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 28, 2025, at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 1301 Clay Street, 2nd Floor, Oakland, California 94612 in Courtroom 6 of Hon. Jon S. Tigar, Plaintiffs Lisa Cassinis, Sara Martinez, Amanda Law, Lillian Delaurie, Laura Ashley Heryla, Yelena Kreynstein, Chelsey Stephens, and Amanda Davis ("Plaintiffs"), by and through their undersigned counsel of record, will move, pursuant to Federal Rule of Civil Procedure 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Girard Sharp LLP and Bursor & Fisher, P.A. as Class Counsel, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a schedule through a Final Approval Hearing.

| Event | [Proposed] Deadline |
|---|---|
| Last day for Natera to provide Settlement Class Member contact information to the Settlement Administrator | Ten (10) days after Order Preliminarily Approving Settlement |
| Notice Period Begins (Email and Direct Mail, and Publication) | Thirty (30) days after Order Preliminarily Approving Settlement |
| Last day for Plaintiffs and Class Counsel to file motion for final approval of the Settlement, and motion for attorneys' fees, costs and service awards | Forty (40) days after Notice Period Begins |
| Exclusion/Objection Deadline | Seventy-five (75) days after Notice Period Begins |
| Claim Deadline and End of Notice Period | Seventy-five (75) days after Notice Period Begins |

| Event | [Proposed] Deadline |
|---|---|
| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Class Counsel's application for attorneys' fees, costs and service awards | Fourteen (14) days after Exclusion/Objection Deadline |
| Exclusion List Filing Deadline | At least seven (7) days before the Final Approval Hearing |
| Final Approval Hearing | At least one hundred and thirty (130) days after entry of the Order Preliminary Approving Settlement, or at the Court's convenience. |

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, the accompanying Joint Declaration of Dena C. Sharp and L. Timothy Fisher and attachments thereto, including the Settlement Agreement, the Declaration of Settlement Administrator Simpluris Inc., the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

This motion tracks the Northern District of California's Procedural Guidance for Class Action Settlements (the "District Guidelines"), as reflected in **Appendix 1**.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        Plaintiffs seek preliminary approval of a Settlement[1] in which Defendant Natera, Inc. would pay

4  $8,250,000 and add language to its website clarifying the capabilities of its Natera NIPTs (noninvasive

5  prenatal tests sold under the Panorama or Vasistera brand names). The Settlement would fully resolve

6  this litigation, which arises out of Plaintiffs' allegations that Natera falsely advertised its Natera NIPTs

7  as "reliable" and "most accurate" with "no false positives for all the syndromes listed." Plaintiffs

8  contend that a false positive result is a high-risk or atypical result that indicates a genetic condition is

9  present when it is not. Plaintiffs bring claims for violations of state consumer protection laws, breach of

10  implied warranty, and unjust enrichment. Natera has denied these allegations and asserted numerous

11  defenses.

12        The proposed Settlement, set forth in the Settlement Agreement attached as **Exhibit 1** to the

13  Joint Declaration of Dena C. Sharp and L. Timothy Fisher ("Joint Decl."), was reached after three years

14  of discovery, motion practice, and mediation sessions with the Honorable Ronald M. Sabraw (Ret.) of

15  JAMS San Francisco. The $8,250,000 common fund is non-reversionary and will pay claims to eligible

16  Settlement Class Members, as well as notice costs, service awards for the Class Representatives, and any

17  expenses and attorneys' fees approved by the Court. Settlement Class Members who submit a Valid

18  Claim will receive either (i) up to $30 if they submit a claim without proof of purchase, or (ii) 10% of

19  their documented proof of purchase of Natera NIPTs, if their out-of-pocket costs were greater than $300.

20  Their payments may be increased or decreased *pro rata* depending on how many claims are submitted,

21  except that claims submitted without proof of purchase will not exceed $30, and claims submitted with

22  proof of purchase will not exceed the claimant's out-of-pocket costs. The Settlement also provides

23  injunctive relief.

24        The Settlement falls within the range of possible approval and warrants preliminary approval.

25  Accordingly, Plaintiffs respectfully request that the Court enter an order in the form of the Proposed

26  Preliminary Approval Order that (1) grants preliminary approval of the Settlement; (2) conditionally

27

28  _____
[1] All capitalized terms not otherwise defined herein shall have the same meaning as the Settlement Agreement.

certifies the Settlement Class, designates Plaintiffs as Class Representatives, and appoints Girard Sharp LLP and Bursor & Fisher, P.A. as Class Counsel; (3) appoints Simpluris, Inc. as the Settlement Administrator and establishes procedures for giving notice to members of the Settlement Class; (4) approves forms of notice to Settlement Class Members; (5) mandates procedures and deadlines for exclusion requests and objections; and (5) sets a date, time, and place for a final approval hearing, and further proceedings leading up to that hearing.

## II.    PROCEDURAL BACKGROUND

On February 17, 2022, and February 24, 2022, Plaintiffs Amanda Davis and Amanda Law filed separate class action complaints against Natera arising out of allegations that Natera omitted material facts regarding the accuracy of its Natera NIPTs. ECF Nos. 1 and 14. On April 4, 2022, the Court consolidated the two related class actions pending in the Northern District of California. ECF No. 17. On May 5, 2022, Plaintiffs Davis and Law, along with Plaintiffs Sara Martinez, Lillian Delaurie, Laura Ashley Heryla, and Yelena Kreynstein, filed a consolidated class action complaint alleging claims against Natera in connection with its Natera NIPTs for fraudulent concealment, breach of implied warranty, unjust enrichment, and violation of state consumer statutes. ECF No. 18.

On June 29, 2022, Natera moved to dismiss these claims. ECF No. 31. On March 28, 2023, the Court granted in part and denied in part Natera's motion to dismiss. ECF No. 64. The Court dismissed "Plaintiffs' fraudulent omission claims based on Natera's partial representations" and "omission-based UCL, FAL, CLRA, and California fraudulent concealment claims," but otherwise denied the motion. *Id.* at 20. On April 27, 2023, Plaintiffs filed the First Amended Complaint ("FAC"), which added Plaintiff Chelsey Stephens and claims on behalf of a New York Subclass. *See* ECF No. 73. Natera answered the FAC and subsequently amended its answer. ECF Nos. 79, 84, 107.

The Parties have engaged in extensive written discovery, including serving document requests, interrogatories, and requests for admission. *See* Joint Decl., ¶¶ 3-6. The Parties exchanged correspondence and briefing, and met and conferred concerning numerous discovery disputes, including over certain discovery requests, search terms, and the scope of discovery (*e.g.*, whether mental health information was discoverable). *Id.*, ¶¶ 4-5. The Court presided over status conferences, and Magistrate Judge Kim resolved discovery disputes. *See, id.* Ultimately, Natera produced, and Plaintiffs reviewed

approximately 27,000 documents, and Plaintiffs also reviewed information obtained through their own research and investigation. *Id.*, ¶ 4. Plaintiffs researched and briefed key legal issues and retained subject-matter and damages experts to prepare for class certification. *See id.*, ¶ 6.

In October 2024, the Parties began discussions concerning the possibility of settlement. *Id.*, ¶ 7. The Parties subsequently agreed to attend a full-day mediation with Judge Sabraw on January 16, 2025. *Id.* In advance of that mediation, the Parties exchanged detailed mediation statements setting forth their positions on the merits, class certification, and their outlook on the case. *Id.* Given the comprehensive discovery in this matter, the Parties were informed of the strengths and weaknesses of their respective positions going into the mediation. *See id.*, ¶¶ 4-5, 9-11. Although the Parties did not reach resolution at the January mediation, they continued to negotiate in good faith, which resulted in a second mediation with Judge Sabraw on February 18, 2025. *Id.*, ¶ 7. That mediation resulted in an executed term sheet. *Id.*

On February 20, 2025, the Parties informed the Court of the agreement and requested that the Court stay the matter, which the Court then ordered. ECF No. 156. The Parties engaged in extensive additional negotiations concerning the specific terms of the settlement agreement, which was executed on July 2, 2025. Joint Decl., ¶7 & Ex. 1.

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Class Definition

The Settlement Class consists of "all individuals in the United States who purchased at least one Natera NIPT (under the brands Panorama and Vasistera) during the applicable Class Period." Settlement, ¶ 1.35. The start of the Settlement Class Period varies depending on the state of residence for the Settlement Class Member, but begins at the earliest on February 17, 2016, for Ohio and ends for all Settlement Class Members on the date the Court grants Preliminary Approval. *Id.*, ¶ 1.37. This Settlement Class definition is consistent with the FAC, in that the complaint defined the Class as "all persons who purchased for personal use Natera's NIPT testing services within the United States." FAC, ¶ 153. The Settlement Class expressly excludes natural persons who did not pay out-of-pocket for a NIPT and insurance companies, recognizing the challenges Plaintiffs would face proving economic injury for natural persons who used Natera NIPTs without paying out-of-pocket. The Settlement Class

Period also incorporates the applicable statutes of limitation, and Natera NIPT includes the applicable NIPT testing services Natera sold during the Class Period.

Excluded from the Settlement Class are (1) persons whose Natera NIPTs were paid for entirely by insurance or some other third-party source, (2) any judge or magistrate presiding over this Action and members of their families, (3) Natera and its subsidiaries, parent companies, successors, predecessors, and any entity in which Natera or its parents have a controlling interest, and their current and former officers, directors, and employees, (4) counsel of record (and their respective law firms) for the parties, (5) persons who properly execute and file a timely request for exclusion, and (6) the legal representatives, successors or assigns of any such excluded persons. *Id.*, ¶ 1.35 n.2.

### B.    Monetary Relief

Natera has agreed to pay $8,250,000 to cover all claims filed by Settlement Class Members, as well as any settlement administration costs, service awards, and attorneys' fees, costs, and expenses that the Court may approve. *Id.*, ¶ 2.1. Settlement Class Members who submit a Valid Claim will receive either (i) up to $30 if they submit a claim without proof of purchase, or (ii) 10% of their documented proof of purchase of Natera NIPTs, if their out-of-pocket costs were greater than $300. *Id.*, ¶ 2.3. Their payments may be increased or decreased *pro rata* depending on how many claims are submitted, except that claims submitted without proof of purchase will not exceed $30 and claims submitted with proof of purchase will not exceed the Claimant's out-of-pocket costs. *Id.* The Settlement also provides injunctive relief. *See id.*, ¶ 3.1. After the first distribution, if any funds remain and it is economically feasible, the remaining funds will be redistributed in a second distribution to exhaust (to the extent possible) the entire Net Settlement Fund to Settlement Class Members. *Id.*, ¶ 2.3.5. If a second distribution is not economically feasible, any amounts remaining in the Settlement Fund may be distributed *cy pres*, after application to and approval by the Court. *Id.*, ¶ 2.3.6.

### C.    Non-Monetary Relief

Within 30 days of the Effective Date, Natera will add language to its website at https://www.natera.com/womens-health/panorama-nipt-prenatal-screening/ stating that "[t]he test does NOT tell with certainty if a fetus is affected, and only tests for the conditions ordered by the healthcare provider. High risk test results need diagnostic confirmation by alternative testing method." Settlement,

¶ 3.1. A change in the URL does not relieve Natera of its obligation to include this language on its website, and the text must be reasonably legible. *Id.*

### D.    Release

In exchange for the relief described above, Natera and each of the "Released Parties" as defined in the Settlement will receive a full release of all claims arising out of or relating to the facts and claims alleged, or that could have reasonably been alleged, in this action. *See id.*, ¶¶ 1.28-1.29, 1.31, 6.1-6.7. The Released Claims do not include claims arising out of or related to personal injury. *Id.*, ¶ 1.28.

### E.    Service Awards

Plaintiffs will seek up to $10,000 in Service Awards for each of the eight named Plaintiffs, subject to the Court's approval. Settlement, ¶ 9.1. The named Plaintiffs have spent substantial time on sensitive matters related to this action, having assisted with the investigation of this action and the drafting of the complaint, been in contact with counsel frequently and stayed informed of the status of the action, including settlement, produced documents—including medical records related to their pregnancies, genetics, and gynecological care—and were willing to sit for a deposition if necessary. *See* Joint Decl., ¶ 17. Settlement Class Members will be notified of Plaintiffs' intent to seek service awards and the amount sought. Settlement, ¶ 9.2.

### F.    Attorneys' Fees and Expenses

Class Counsel will apply to the Court for an award of attorneys' fees of up to 30% of the $8,250,000 Settlement Fund, including any interest accrued thereon. Joint Decl., ¶ 16. Class Counsel will also seek reimbursement of litigation costs not to exceed $300,000. *Id.* Settlement Class Members will be advised of these requests in the Notice documents, and Class Counsel's motion will be filed at least 35 days before the Opt-Out and Objection Deadline. *Id.* Class Counsel's motion for attorneys' fees, costs, and expenses will be posted on the Settlement Website before the Opt-Out and Objection Deadline. *Id.*

### G.    Payment of Notice and Administrative Fees

Plaintiffs propose that Simpluris act as the Settlement Administrator. Settlement, ¶ 1.33. Simpluris was selected after a competitive bidding process in which multiple settlement administrators submitted proposals. Joint Decl., ¶ 14. In each instance, the settlement administrators proposed notice

programs under which Settlement Class Members who can be identified through Natera's records would receive notice directly by mail or email, and unidentified Settlement Class Members would receive publication notice through the use of online advertising, and a claims process whereby Settlement Class Members could fill out the agreed-upon claim form online or in print. *Id.* Class Counsel concluded that Simpluris's plan provided the best opportunity for notice to reach the greatest number of Settlement Class Members and allow for the highest potential claims rate for this case at the best cost. *Id.*

The cost of settlement administration is estimated to range between approximately $564,000 (10% claims rate) and $587,000 (15% claims rate), with the most significant expenses being the $383,350 for postage for 935,000 HIPAA-compliant postcard notices. *Id.* Plaintiffs negotiated a cap of no more than $599,000 in notice and administration costs if the claims rate remains below 15%.[2] This amount is reasonable for the proposed services to be provided, particularly direct notice via HIPAA-compliant postcards to nearly all of the Settlement Class. *Id.*

Plaintiffs have submitted a declaration from Jacob Kamenir, Vice President of Legal Notice at Simpluris, Inc. ("Simpluris Decl."), describing the proposed Notice Plan, Simpluris' qualifications, and other disclosures addressed by this District's Procedural Guidance for Class Action Settlements.

## IV.    LEGAL STANDARD

At the preliminary approval stage, the Court may direct notice of a proposed settlement to the class if it concludes that it will likely be able to certify the settlement class under Rule 23(e)(1) and to approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

To assess whether certification is likely under Rule 23(e)(1), the Court conducts a two-step analysis under Rules 23(a) and 23(b).

*First*, the Court must determine whether the proposed class meets the Rule 23(a) requirements:

(1)  the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[2] If the claims rate exceeds 15%, Class Counsel may request that the Court authorize additional notice and administration costs to be paid out of the Settlement Fund.

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Second,* if those four conditions are satisfied, the Court considers whether the proposed settlement class satisfies one of the requirements listed in Rule 23(b). In relevant part, under Rule 23(b)(3), a proposed settlement class may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is less demanding in the settlement context than in the litigation context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (*en banc*) (finding that manageability concerns are not an issue for a settlement class).

To assess whether a proposed settlement is fair, reasonable, and adequate, under Rule 23(e)(2), the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the District Guidelines.

## V.    THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(A) AND (B)(3)

### A.    Rule 23(a)(1) – Numerosity

In the Ninth Circuit, "numerosity is satisfied if the class includes forty or more members." *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022) (citing *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *In re Facebook, Inc.,*

1   *PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012)). Here, the proposed Settlement Class is

2   comprised of approximately 1.2 million individuals who purchased the Natera NIPTs, satisfying the

3   numerosity requirement. *See* Joint Decl., ¶ 9.

4       **B.     Rule 23(a)(2) – Commonality**

5       "Commonality requires the plaintiff to demonstrate that the class members have suffered the

6   same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal citations and

7   quotations omitted). For purposes of Rule 23(a)(2), "[e]ven a single common question of law or fact that

8   resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions."

9   *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020). Courts routinely find commonality

10  satisfied in false advertising cases such as this. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018

11  WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) ("In misbranding or false advertising cases, courts

12  routinely find that commonality has been satisfied."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D.

13  523, 537 (N.D. Cal. 2012) (same).

14      This case presents numerous common questions of fact and law, including whether Natera's

15  "advertisements [] were misleading to a reasonable consumer." *In re NJOY, Inc. Consumer Class Action*

16  *Litig.*, 120 F. Supp. 3d 1050, 1097 (C.D. Cal. 2015); *see also Bailey v. Rite Aid Corp.*, 338 F.R.D. 390,

17  400, 402-403 (N.D. Cal. 2021) (finding that the question of whether a reasonable consumer is likely to

18  be deceived by the misleading statement on defendant's products can be resolved by common proof);

19  *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 598-99 (N.D. Cal. 2021) (same).

20      **C.     Rule 23(a)(3) – Typicality**

21      Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims …

22  of the class." *See* Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the Settlement Class because

23  they "arise[] from the same event, practice or course of conduct that gives rise to the claims of the absent

24  class members" and are "based on the same legal or remedial theory." *In re Dynamic Random Access*

25  *Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (alteration in

26  original) (citation omitted). Plaintiffs' claims are "reasonably co-extensive with those of absent class

27  members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). They bring claims on behalf

28  of the proposed Settlement Class based on the same legal theory (Natera omitted material facts

1   regarding the high rate of false positives and low Positive Predictive Values for certain conditions),

2   seeking the same type of relief (economic injury and emotional distress). Plaintiffs' claims are therefore

3   typical of the proposed Settlement Class. *See, e.g.*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552,

4   562 (N.D. Cal. 2020) (finding typicality satisfied in deceptive marketing case seeking economic

5   damages).

6       **D.**    **Rule 23(a)(4) – Adequacy**

7          The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately

8   protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Plaintiffs and Class Counsel meet this

9   requirement because they do not "have any conflicts of interest with other class members, and [they

10   have] …prosecute[d] the action vigorously on behalf of the class[.]" *Staton v. Boeing Co.*, 327 F.3d 938,

11   957 (9th Cir. 2003). Plaintiffs and Class Counsel have no conflicts of interest with the Settlement Class.

12   *See* Joint Decl., ¶ 13. Rather, Plaintiffs, like absent class members, have a strong interest in proving

13   Natera's common course of conduct and obtaining redress. *Id.*

14          Plaintiffs and Class Counsel have also vigorously and competently pursued Settlement Class

15   Members' claims. Class Counsel conducted discovery, retained and consulted with experts, and was

16   fully informed of the strengths and weaknesses of Plaintiffs' claims. *See id.*, ¶¶ 3-6, 11. Class Counsel

17   then engaged in arm's-length negotiations with the assistance of a reputable mediator. *Id.*, ¶ 7; *see also*

18   *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (use of

19   mediator "tends to support the conclusion that the settlement process was not collusive"). Class Counsel

20   has extensive experience and expertise in prosecuting complex class actions, including cases involving

21   deceptive advertising. Joint Decl., ¶ 13; *id.* Exs. 3 (firm resume of Girard Sharp LLP) & 4 (firm resume

22   of Bursor & Fisher, P.A.). And Plaintiffs have remained engaged in the litigation, communicating with

23   Class Counsel and participating in discovery, including providing sensitive records regarding their

24   genetic information and gynecological and reproductive health histories. *See id.*, ¶¶ 5, 17.

25          In pursuing this litigation, Class Counsel and Plaintiffs have advanced and will continue to

26   advance and fully protect the common interests of all Settlement Class Members. Accordingly, Rule

27   23(a)(4) is satisfied.

28

### E.    Rule 23(b)(3) – Predominance and Superiority

Rule 23(b)(3) requires Plaintiffs to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance exists when plaintiffs' claims "depend upon a common contention" of "a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai & Kia*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Here, predominance is met because "common questions … present a significant aspect of the case and [] can be resolved for all members of the class in a single adjudication." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing *Hanlon*, 150 F.3d at 1022). These common questions include, but are not limited to: (1) whether Natera's omissions regarding Natera NIPTs were false and misleading or reasonably likely to deceive consumers; (2) whether Natera NIPTs are "reliable" or accurate; (3) whether Natera breached an implied warranty; and (4) whether Plaintiffs and the class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief. *See Hawkins v. Kroger Co.*, 337 F.R.D. 518, 541 (S.D. Cal. 2020) (predominance met where a "common and cohesive issue is whether Kroger wrongfully labeled its breadcrumbs as containing '0g Trans Fat'"); *JUUL Labs*, 609 F. Supp. 3d at 968-69, 1003 (predominance met for plaintiffs' omissions-based claims, where plaintiffs alleged that defendants conveyed that their electronic cigarettes were less addictive than combustible cigarettes and omitted material information to the contrary); *Hyundai & Kia*, 926 F.3d at 563 (finding predominance met where "the class claims turn on the automakers' common course of conduct—their fuel economy statements").

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land*

*Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotations and citations omitted). "In cases where Plaintiffs are unable to proceed individually because the disparity between litigation costs and the recovery sought is too high, the class-action device may be an effective means to pool claims which would be uneconomical to litigate individually." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) (internal quotations and citations omitted).

Here, "the price premium attributable to consumers' belief that [Natera NIPTs were reliable] will, if calculable, be small" and the damages an individual "could recover in an individual suit would not be sufficient to induce the class member to commence an action." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1033 (C.D. Cal. 2015). Accordingly, "because the misrepresentation claims are common to the class, involve small sums of money … and do not rely on individual determinations, a class action is the superior method of efficiently and fairly adjudicating Plaintiff and the class members' claims in this case." *Hilsley*, 2018 WL 6300479, at *18.

## VI.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."[3] As described below, the Settlement is fair, reasonable, and adequate.

### A.    The Settlement Satisfies Procedural Considerations

The Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as "the

---

[3] The Ninth Circuit analyzes the fairness, adequacy, and reasonableness of settlements using factors that "substantively track those provided in 2018 amendments to Rule 23(e)(2)." *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).

extent of discovery completed, and the stage of the proceedings[.]" *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 1. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

As discussed above in Section V.D., Plaintiffs and Class Counsel have adequately represented the Settlement Class. Class Counsel vigorously and competently pursued Settlement Class Members' claims, conducting significant discovery, retaining and consulting experts, engaging in motion practice, and negotiating at arm's length a settlement that provides substantial monetary and non-monetary relief for the Settlement Class.

### 2. The Settlement Was Negotiated at Arms' Length by Experienced Counsel After Discovery

Plaintiffs, through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the case, including, without limitation: (i) reviewing tens of thousands of documents produced by Natera; (ii) reviewing publicly available reports, journal articles, and other publications concerning Natera's products; (iii) reviewing publicly available information regarding Natera and its business practices; (iv) serving interrogatories, requests for production of documents, and requests for admission; (v) consulting with subject-matter and damages experts; and (vi) briefing the motion to dismiss and numerous discovery disputes. Joint Decl., ¶¶ 3-6; *see* ECF No. 64. Based on this work, Class Counsel was able to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Plaintiffs, through experienced Class Counsel, then engaged in arms' length negotiations. The parties held numerous telephonic and written negotiations and attended two full-day mediation sessions with Judge Sabraw, followed by extensive further negotiations over the Settlement Agreement, the content and form of notice, and the notice publication plan. Joint Decl., ¶ 7. The Settlement is thus the result of fully informed negotiations. *Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *9 (E.D. Cal. Dec. 7, 2016) (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator"). Based on their experience, Class Counsel concluded that the Settlement provides

substantial recoveries for the Settlement Class relative to available damages, while sparing the Settlement Class from the uncertainties of continued and protracted litigation.

## B.    The Settlement Satisfies Substantive Considerations

Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### 1.    The Costs, Risks, and Delay of Trial and Appeal

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations and citations omitted). Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured, and they faced risks at class certification, summary judgment, and trial.

Natera vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Settlement Class suffered any harm or damages. Joint Decl., ¶ 11. Specifically, Natera would likely have argued that Plaintiffs cannot certify a class because of differences in appliable law; differences in patient and clinician exposures to Natera marketing content, test performance metrics, and pricing information; differences in the Natera NIPTs offered; variations in available test performance metrics over time; differences in clinician and patient sophistication levels, preferences, risk tolerances, and utility functions; and complexities associated with modeling class-wide damages. *Id.* Thus, Natera would certainly argue that individualized issues would predominate. Even if the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Priv. Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at

any time [] is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that Natera would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Settlement Class Members a certain and immediate recovery. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at \*4 (N.D. Cal. Nov. 16, 2015); *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at \*4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Natera would no doubt present vigorous defenses at class certification, summary judgment, and at trial, and there is no assurance that the class would prevail—or even if the class did prevail, that it would be able to obtain an award of damages significantly more than achieved through the Settlement absent such risks. The Settlement provides relief to the Settlement Class Members, including "a significant, easy-to-obtain benefit to class members" in the form of a cash payment to any Settlement Class Member with a Valid Claim. *In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, at \*5 (N.D. Cal. May 21, 2013); *see In re Mego*, 213 F.3d at 459 ("difficulties in proving the case" favored settlement approval).

### 2. The Settlement Amount Is Reasonable and Will Be Fairly Distributed to the Settlement Class

The Settlement offers meaningful relief for the Settlement Class. *See Hilsley v. Ocean Spray Cranberries, Inc.,* 2020 WL 520616, at \*6 (S.D. Cal. Jan. 31, 2020) (where defendant agreed to settle the matter for a non-reversionary total of $5,400,000, the district court stated that "in lieu of taking this matter to trial with the possibility of obtaining no relief, this is an excellent result for the Class."). The Settlement Amount of $8,250,000 (or nearly 25% of Plaintiffs' preliminary estimated price premium damages), is reasonable. Joint Decl., ¶ 9; *see, e.g., In re Mego*, 213 F.3d at 459 (approving settlement that was 16.67% of the potential recovery and noting a "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair"); Joint Decl., Ex. 2 (Comparable Outcomes). Settlement Class Members who submit a Valid Claim will receive either (i) up

to $30 if they submit a claim without proof of purchase, or (ii) 10% of their documented proof of purchase of Natera NIPTs, if their out-of-pocket costs were greater than $300. Their payments may be increased or decreased *pro rata* depending on how many claims are submitted, except that claims submitted without proof of purchase will not exceed $30 and claims submitted with proof of purchase will not exceed the claimant's out-of-pocket costs. Settlement, ¶ 2.3. This method of distribution treats class members equitably while recognizing that Settlement Class Members who submit proof of purchase may obtain additional benefits over those that do not. As such, the Settlement does not "improperly grant preferential treatment to class representatives or segments of the class." *Cf. Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (internal quotations and citations omitted).

The Settlement amount is also reasonable despite the theoretical prospect of recovering some statutory damages instead of actual damages. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ("the adequacy of this settlement should not be evaluated against some theoretically available judgment, but against what plaintiffs could reasonably expect to recover."). Under New York General Business Law ("GBL") Sections 349 and 350, Settlement Class Members from New York may be entitled to statutory damages instead of actual damages, subject to Constitutional due process limits. *See Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *1 (N.D. Cal. Mar. 10, 2025) (awarding plaintiffs' $50 per violation of GBL Sections 349 and 350 and reducing plaintiffs' requested statutory damages award by approximately 90% because they were "so large as to violate [defendant's] right to substantive due process."). Under the Plan of Allocation, Settlement Class Members from New York who submit Valid Claims are entitled to receive $30 without proof of purchase, or 10% of their documented proof of purchase over $300, subject to *pro rata* adjustments. This figure compares favorably to the $50 statutory damages the Court awarded after a jury verdict in a similar case. *See Montera*, 2025 WL 751542, at *1.

Finally, the Settlement amount is also reasonable despite the theoretical prospect of recovering attorneys' fees and costs under certain states' consumer protection laws. *See, e.g.*, N.Y. Gen. Bus. Law § 349(h) ("The court may award reasonable attorney's fees to a prevailing plaintiff."). Even if the Court were to award the full amount of the attorneys' fees (up to 30%) and costs (up to $300,000) at final

approval, the resulting Net Settlement Fund ($5,475,000, or approximately 20% of the total potential recovery) would still be a reasonable amount. *See, e.g.*, *In re Mego*, 213 F.3d at 459. And this result is by no means guaranteed. *See supra*, §VI.B.1.

### 3. Attorneys' Fees and Expenses

Any fees and expenses awarded to Class Counsel by the Court will be deducted from the Settlement Fund. Joint Decl., ¶ 16. Any reduction in requested fees and expenses will benefit the Settlement Class, not Natera. As a result, and consistent with the Procedural Guidance (¶¶ 6, 9), while the Court need not decide the amount of fees and expenses to award Class Counsel at this stage, the structure of the Settlement ensures that the future fee request poses no obstacle to preliminary approval.

The Settlement Agreement is not contingent on the award of any amount of fees or expenses. Settlement, ¶ 8.2. In their motion for an award of fees and expenses, which will be heard only after Settlement Class Members have had an opportunity to object, Class Counsel will seek an award of attorneys' fees of up to 30% of the total Settlement Fund (plus interest accrued), and out-of-pocket expenses of up to $300,000. Joint Decl., ¶ 16; *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover "out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citation omitted).

### 4. Additional Agreements and Effect on Other Cases

Plaintiffs and Class Counsel have not made any "agreement[s] in connection with the proposal." Rule 23(e)(3); Joint Decl., ¶ 13. Thus, there are no "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e) advisory committee notes 2003 amendments.

## VII.  THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by

a proposal." Fed. R. Civ. P. 23(e)(1)(B). The Notice Plan described below is the "best notice practicable" and satisfies due process. Through a combination of direct notice, publication notice, and a Settlement Website, Settlement Class Members will be informed of the terms of, and their rights concerning, the Settlement. The Notice Plan will be carried out by Simpluris, which was selected after a competitive bidding process. Joint Decl., ¶ 14.

By providing direct notice to those Settlement Class Members for whom contact information is available, and publishing notice as well, the proposed methods of giving notice provide a fair opportunity for Settlement Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the proposed Settlement. The notice plan is calculated to reach no less than 85% of Settlement Class Members (*see* Simpluris Decl., ¶ 56), which is within the range of approval. *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.") (internal quotations and citations omitted).

### A.    Long-Form Notice

The long-form notice accurately informs Settlement Class Members of the salient terms of the Settlement, the Settlement Class to be certified, the final approval hearing, and the rights of all parties, including the rights to file objections and to opt-out of the class. Simpluris Decl., **Exhibit D**. In addition, the long-form notice provides information on how Settlement Class Members can object and opt-out of the Settlement Class and to send those objections to the Court, information on how Settlement Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Class Counsel. *Id*. The long-form notice will be available electronically on the Settlement Website and can be requested in paper copy. Simpluris Decl., ¶ 43.

### B.    Direct Notice

Notice substantially in the form attached as **Exhibit A** to the Simpluris Declaration will be emailed to the last known email address of any Settlement Class Member whose email address is available to Natera. Simpluris Decl., ¶¶ 22-23. The Postcard Notice (**Exhibit B** to the Simpluris Declaration) will be sent to Settlement Class Members for whom Natera has a physical address but not an email address. *See id.*, ¶¶ 22, 24. The Direct Notice will provide a link or QR code to access the

Settlement Website, where Settlement Class Members may obtain additional information and access the claim form, long-form notice, and frequently asked questions. *Id.*, ¶ 28. The Postcard Notice will also feature a tear-off claim form that can be submitted via U.S. mail. Simpluris Decl., Ex. B.

## C.      Publication, Media, and Internet Notice

Notice shall be provided via a media and internet notice program, including banner ads on internet sites targeted at Settlement Class Members. Simpluris Decl., ¶ 30-39 & **Exhibit C**. This campaign is estimated to result in roughly 3.1 million individual notice impressions. Simpluris Decl., ¶ 33. The digital and social media Notice program is described in detail in the Simpluris Declaration. This Notice will direct Settlement Class Members to the Settlement Website where they may obtain additional information and access the Claim Form, long-form notice, and frequently asked questions. Simpluris Decl., ¶ 31.

## D.      Settlement Website and Toll-Free Number

The long-form notice will be posted on a website to be maintained by the Settlement Administrator, which will additionally contain the settlement documents, an online Claim Form, a list of important dates, and any other information to which the parties may agree. Joint Decl., ¶ 43; *see Hilsley*, 2020 WL 520616, at *7 ("The claims process is straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication."). The website will also contain FAQs, an email address, and a telephone number in addition to Class Counsel's contact information, where Settlement Class Members can submit questions and receive further information and assistance. Simpluris Decl., ¶ 43.

## E.      Opt-Out and Objection Procedures

Settlement Class Members may exclude themselves from the Settlement Class by mailing or emailing to the Settlement Administrator a request for exclusion. To be effective, the request for exclusion must:

(i)      Include the full name, telephone number, mailing address, and email address of the Settlement Class Member;

(ii)     Contain a clear statement that the Settlement Class Member wishes to exclude themselves from the Settlement Class;

(iii)   Clearly identify the case name and number: "In re Natera Prenatal Testing Litigation, Case No. 4:22-cv-00985 (N.D. Cal.);"

(iv)   Include the Settlement Class Members' signature or a signature of an individual authorized to act on their behalf

(v)   Be postmarked or emailed by seventy-five (75) days after the Notice Date.

Simpluris Decl., Ex. D, § 16.

The Settlement requires that each person who submits an opt-out request must do so individually; group opt-outs are prohibited. Settlement, ¶ 5.5. Any Settlement Class Member who submits a timely and valid request for exclusion may not object to the Settlement or to Class Counsel's motion for attorneys' fees, costs, and service awards. If a Settlement Class Member submits both a timely and valid request for exclusion and an objection, the Settlement Administrator shall treat the Settlement Class Member as if they only submitted a request for exclusion. Any Settlement Class Member who does not submit a timely and valid request for exclusion will be bound by the Final Approval Order and judgment if and when it is entered. The Settlement Administrator will provide copies of all timely and valid requests for exclusion to Class Counsel and Natera's counsel.

Any Settlement Class Member who does not submit a timely and valid request for exclusion shall have the right to object to the proposed Settlement and/or to Class Counsel's motion for attorneys' fees, costs, or service awards. To be considered valid, an objection must be in writing and must:

(i)   clearly identify the case name and number: "In re Natera Prenatal Testing Litigation, Case No. 4:22-cv-00985 (N.D. Cal.);"

(ii)   be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California 94612, or by filing them in person at any location of the United States District Court for the Northern District of California;

(iii)   be mailed or e-mailed to the Settlement Administrator;

(iv)   include the Settlement Class Member's full name, mailing address, telephone number, and email address;

(v)     describe the specific reasons for the objection;

(vi)    include the name, address, bar number, and telephone number of any and all attorneys representing the Settlement Class Member in connection with their objection;

(vii)   list any objections to class actions that the Settlement Class Member or their attorney has made within the last five years;

(viii)  state whether the Settlement Class Member or their attorney will appear at the final approval hearing in person;

(ix)    include the Settlement Class Member's signature and the signature of any attorney representing them; and

(x)     be filed, postmarked, and/or emailed by seventy-five (75) days after the Notice Date.

Simpluris Decl., Ex. D, § 19.

Any Settlement Class Member who does not timely submit an objection in accordance with the objection procedures will be prohibited from making an objection to the proposed Settlement or to Class Counsel's motion for attorneys' fees, costs, and service awards at the final approval hearing or any other time. Any Settlement Class Member who objects to the Settlement will nevertheless be entitled to all benefits of the Settlement if it is approved and becomes final. The Settlement Administrator will promptly, after receipt, provide copies of any objections, including any related correspondence, to Class Counsel and Natera's counsel.

**F.      CAFA Notice**

The Settlement Administrator, on behalf of Natera, will disseminate the notice to public officials as required by the Class Action Fairness Act ("CAFA"). *See* Simpluris Decl., ¶ 21(g).

**G.      Settlement Administration Costs**

Plaintiffs seek Court approval of an initial payment to the Settlement Administrator of $475,000 from the Settlement Fund for Notice and Administrative Costs. This money will be used to pay the Settlement Administrator for case set up, initial email notice, initial postal notice, and postage—the most significant expense at $383,350. *See* Simpluris Decl., ¶ 20. Plaintiffs also seek authority to pay the Settlement Administrator additional Notice and Administrative Costs out of the Settlement Fund as payments come due, not to exceed $599,000 (assuming a 15% claims rate) in total Notice and

Administrative Costs. If the claims rate exceeds 15% and Notice and Administrative Costs exceed $599,000, Plaintiffs shall seek approval from the Court to pay any additional costs from the Settlement Fund.

### H.    Proposed Schedule through Final Approval Hearing

Plaintiffs request that the Court set a final approval hearing, at which Plaintiffs will seek final approval of the proposed Settlement. At that time, any objections to, or arguments in support of, final approval of the Settlement from Settlement Class Members may be heard. Plaintiffs request that the Court set a schedule with the relevant settlement deadlines, as set forth below and in the proposed Preliminary Approval Order filed with this motion. Within three days of any preliminary approval order, Class Plaintiffs will file a notice setting specific calendar dates for each deadline.

| Event | [Proposed] Deadline |
|---|---|
| Last day for Natera to provide Settlement Class Member contact information to the Settlement Administrator | Ten (10) days after Order Preliminarily Approving Settlement |
| Notice Period Begins (Email and Direct Mail, and Publication) | Thirty (30) days after Order Preliminarily Approving Settlement |
| Last day for Plaintiffs and Class Counsel to file motion for final approval of the Settlement, and motion for attorneys' fees, costs and service awards | Forty (40) days after Notice Period Begins |
| Exclusion/Objection Deadline | Seventy-five (75) days after Notice Period Begins |
| Claim Deadline and End of Notice Period | Seventy-five (75) days after Notice Period Begins |
| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Class Counsel's application for attorneys' fees, costs and service awards | Fourteen (14) days after Exclusion/Objection Deadline |

| Event | [Proposed] Deadline |
|---|---|
| Exclusion List Deadline | At least seven (7) days prior to the Final Approval Hearing Class Counsel shall file a list of Settlement Class Members who have excluded themselves from the Settlement with the Court. |
| Final Approval Hearing | At least one hundred and thirty (130) days after entry of the Order Preliminary Approving Settlement, or at the Court's convenience. |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Settlement Class for settlement purposes only and appoint Settlement Class Counsel, approve the proposed Notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated: July 2, 2025

Respectfully submitted,

By: */s/ Dena C. Sharp*
Dena C. Sharp (SBN 245869)
Kyle P. Quackenbush (SBN 322401)
Mikaela M. Bock (SBN 335089)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
kquackenbush@girardsharp.com
mbock@girardsharp.com

By: */s/ L. Timothy Fisher*
L. Timothy Fisher (SBN 191626)
**BURSOR & FISHER, P.A.**
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ltfisher@bursor.com

Max S. Roberts (*pro hac vice*)
Julian C. Diamond (*pro hac vice*)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
mroberts@bursor.com
jdiamond@bursor.com

*Attorneys for Plaintiffs and proposed Settlement Class Counsel*

**APPENDIX 1**

| Guidance Section | Guidance Topic | Page Cite |
|---|---|---|
| 1(a) | Differences Between Settlement Class and Classes in Complaint | 3-4 |
| 1(b) | Difference Between Released Claims and Claims in Complaint | 5 |
| 1(c) | Recovery Under Settlement; Potential Exposure; Discount | 4-5, 14-16 |
| 1(d) | Other Cases Affected by Settlement | 16 |
| 1(e) | Proposed Allocation Plan | 1, 14-15 |
| 1(g) | Reversion | 1, 14 |
| 2(a) | Settlement Administrator | 5-6 |
| 2(b) | Class Member Data; Costs of Administration | 6, 20-21 |
| 3 | Notice | 16-18 |
| 4 | Opt-outs | 18-19 |
| 5 | Objections | 19-20 |
| 6 | Fees and costs | 5-6, 16 |
| 7 | Service Awards | 5 |
| 8 | Cy Pres | 4 |
| 9 | Timeline | iii-iv, 21-22 |
| 10 | CAFA Notice | 20 |
| 11 | Comparable Outcomes | 14 & Ex. 2 |