**GIRARD SHARP LLP**
Dena C. Sharp (SBN 245869)
Kyle P. Quackenbush (SBN 322401)
Mikaela M. Bock (SBN 335089)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
kquackenbush@girardsharp.com
mbock@girardsharp.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
Julian C. Diamond (*pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
mroberts@bursor.com
jdiamond@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE NATERA PRENATAL TESTING LITIGATION | Case No. 4:22-cv-00985-JST<br><br>**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  August 28, 2025<br>Time:  2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

Dena C. Sharp and L. Timothy Fisher declare:

1. We are counsel for Plaintiffs Lisa Cassinis, Sara Martinez, Amanda Law, Lillian Delaurie, Laura Ashley Heryla, Yelena Kreynstein, Chelsey Stephens, and Amanda Davis ("Plaintiffs") in this proposed class action lawsuit against Natera. We submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

2. Attached as **Exhibit 1** is a true and correct copy of the Settlement Agreement.

## The Litigation, Discovery, Document Productions

3. Class Counsel[1] vigorously prosecuted this action for over three years, having pled allegations against Natera (that were upheld), and having conducted extensive research, discovery, and investigation, as well as early expert work and preparations for depositions.

4. Class Counsel served dozens of requests for production ("RFPs") over three years and negotiated extensively with Natera concerning its objections to these RFPs, custodians, and search terms. The parties also sought judicial intervention on various discovery disputes, filing detailed letters explaining their disagreements. *See, e.g.*, ECF Nos. 90, 119, 152. Ultimately, Natera produced approximately 27,000 documents. Class Counsel reviewed these documents, publicly available reports, journal articles, and other publications concerning Natera, its business practices, and Natera NIPTs. Plaintiffs also served two sets of interrogatories, totaling 15 interrogatories ("ROGs"), and 56 requests for admission ("RFAs"). Plaintiffs negotiated extensively concerning Natera's objections and responses, and Natera supplemented its responses to several interrogatories.

5. Plaintiffs also responded to substantial written discovery from Natera, including dozens of RFPs, ROGs, and RFAs. Plaintiffs produced hundreds of pages of documents, including highly sensitive personal health records, and negotiated heavily the scope of their productions (*e.g.*, whether mental health information was discoverable). These issues were also addressed in discovery dispute letters and case management conferences.

6. Plaintiffs retained subject matter experts in non-invasive prenatal tests and damages experts specializing in conjoint surveys and economics. Class Counsel met with these experts regularly

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as the Settlement Agreement.

1  and were advised on the various aspects of the case and potential avenues to success. Class Counsel
2  also conducted significant legal research to defend against Natera's motion to dismiss and to prepare
3  for class certification, summary judgment, and trial.

**Settlement**

7. After substantial discovery had been taken and class certification expert and briefing work had begun in earnest, Class Counsel and counsel for Natera in October 2024 began arm's length negotiations on the possibility of settlement. On January 16, 2025, the parties participated in mediation with Honorable Ronald M. Sabraw (Ret.) of JAMS San Francisco. Before that mediation, the parties exchanged detailed mediation statements that set forth their positions on the merits, class certification, and outlook on the case. The January 16, 2025 mediation did not result in a settlement. The parties, however, participated in a second full day of mediation on February 18, 2025, with Judge Sabraw, which resulted in an executed term sheet. The parties extensively negotiated the Settlement Agreement, along with the terms and form of notice to the class.

8. The Settlement provides Settlement Class Members with a significant portion of the price premium they would have received had they prevailed at trial.

9. Plaintiffs' experts preliminarily estimated that, in their experience, relevant conjoint surveys would have established a price premium of 5-10% of the patient out-of-pocket spend on Natera NIPTs, for an estimated recovery at trial of $33.15 million, assuming a nationwide class was certified and $331.50 million spent by the class out-of-pocket.[2] Plaintiffs estimate that success at trial would have resulted in an average recovery of approximately $27.62 per class member based on a price premium theory and assuming 1.2 million class members. The Settlement Amount of $8,250,000 thus represents approximately 25% of the potential price premium damages.

10. Plaintiffs and Class Counsel recognize that despite the strength of Plaintiffs' claims, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of a trial uncertain.

---

[2] Class Counsel's estimates are based on billing data produced by Natera and preliminary analyses conducted by Plaintiffs' experts.

11. Plaintiffs and Class Counsel are also mindful that absent a settlement, Natera's various defenses in this case could result in Plaintiffs and the Settlement Class Members receiving no relief whatsoever. Natera vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Settlement Class Members suffered any harm or damages. Specifically, Natera would likely have argued that Plaintiffs cannot certify a class because of differences in appliable law; differences in patient and clinician exposures to Natera marketing content, test performance metrics, and pricing information; differences in the Natera NIPTs offered; variations in available test performance metrics over time; differences in clinician and patient sophistication levels, preferences, risk tolerances, and utility functions; and complexities associated with modeling class-wide damages. Natera would no doubt present vigorous defenses at class certification, summary judgment, and at trial, and there is no assurance that the class would prevail—or even if the class did prevail, that it would be able to obtain an award of damages significantly more than achieved through the Settlement absent such risks. Natera is represented by highly experienced attorneys who have made clear that, absent a settlement, they were prepared to continue their defense of this case.

12. Considering these circumstances, Class Counsel believes the proposed Settlement provides the Settlement Class with significant relief and is fair, reasonable, adequate, and well within the range of approval. That the proposed Settlement is fair, reasonable, and adequate is confirmed by an array of outcomes in comparable cases, set out in a chart summarizing the information identified in the Northern District's Guidelines ¶11, which is attached as **Exhibit 2.**

13. Class Counsel has no conflicts of interest with the Settlement Class, nor do the Class Representatives, who, like absent class members, are strongly incentivized to obtain redress for Natera's conduct. They have vigorously and competently pursued the Settlement Class Members' claims. Plaintiffs and Class Counsel have not made any separate agreements that may influence the terms of the Settlement Agreement. And Class Counsel is adequate and experienced in complex litigation involving claims similar to those here, as reflected in the resumes attached as **Exhibit 3** (Girard Sharp LLP) and **Exhibit 4** (Bursor & Fisher, P.A.).

**Claims Administration and Plan of Allocation**

14.     Class Counsel propose that Simpluris Inc. ("Simpluris") act as the Settlement Administrator. Simpluris was selected after a competitive bidding process in which multiple settlement administrators submitted proposals. In each instance, the settlement administrators proposed notice programs in which identified Settlement Class Members would receive notice by mail or email, and Settlement Class Members would receive publication notice through online advertising, and a claims process whereby Settlement Class Members could fill out the agreed-upon claim form. Class Counsel concluded that Simpluris' plan provided the best opportunity for notice to reach the greatest number of Settlement Class Members and allow for the highest potential claims rate for this case at the most economical cost. The cost of settlement administration is estimated to range between approximately $564,000 (10% claims rate) to $587,000 (15% claims rate), with the largest expenses being $383,350 for postage for 935,000 HIPAA-compliant postcard notices mailed to physical addresses in Natera's files. Plaintiffs were able to negotiate a cap of no more than $599,000 in notice and administration costs, assuming the claims rate remains below 15%.[3] In Class Counsel's experience, this amount is reasonable for the proposed services, which include direct notice via HIPAA-compliant postcards to large portions of the Settlement Class.

15.     With regard to a plan of allocation, Class Counsel and Simpluris have developed a plan that contemplates the following:

   a.    Settlement Class Members who submit a Valid Claim without proof of out-of-pocket costs for a Natera NIPT shall receive, subject to the available Net Settlement Fund, $30 maximum (the "No Proof Maximum"), which compares favorably to the $27.62 average recovery estimated by Plaintiffs' experts.

   b.    Settlement Class Members who submit a Valid Claim with supporting documentation establishing out-of-pocket costs for a Natera NIPT greater than $300, shall receive, subject to the available Net Settlement Fund, 10% of such documented out-of-pocket costs.

---

[3] In the event the claims rate exceeds 15%, Class Counsel may request that the Court authorize additional notice and administration costs to be paid out of the Settlement Fund.

     c.     Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis subject to the No Proof Maximum and the available Net Settlement Fund, but shall not exceed the amount a Settlement Class Member paid out of pocket.

     d.     The Settlement Administrator shall cross-reference the identity of each Settlement Class Member who submits a claim against Settlement Class Member contact information to identify fraudulent claims.

     e.     If, six months after the distribution of the Net Settlement Fund, any distributable balance remains in the Net Settlement Fund because of uncollected payments, uncashed checks or otherwise, then that balance shall, if economically feasible and subject to Court approval, be redistributed among those Claimants who collected payments and/or cashed checks.

     f.     If (1) Class Counsel determines that a redistribution would be uneconomical or (2) six months after redistribution any balance remains in the Net Settlement Fund and Class Counsel determines that a further redistribution would be uneconomical, Class Counsel shall seek an order approving the contribution of the balance to one or more non-sectarian, not-for-profit, 501(c)(3) organizations. Any proposed recipient shall be independent of Class Counsel so that Class Counsel does not derive a direct or indirect benefit from the selection of such organization as the recipient of a charitable contribution. Any motion seeking an order to approve the contribution will detail the means by which the proposed recipient(s) were selected.

16. Class Counsel intend to petition the Court for an award of not more than 30% of the Settlement Fund in attorneys' fees. Class Counsel will also seek reimbursement from the Settlement Fund of expenses not to exceed $300,000, as well as seeking service awards for the named Plaintiffs of up to $10,000 each. Class Counsel will inform Settlement Class Members of these anticipated requests through the various Notices and the Settlement Website. Class Counsel will file their motion for attorneys' fees, costs, and services awards at least thirty-five days before the exclusion, objection, and claims deadline, in accord with Ninth Circuit authority.

17. Class Counsel also intend to submit detailed declarations of the Class Representatives in support of their request for service awards that describe the time and effort they spent to bring this case and pursue the Settlement Class's interests for years. These declarations will include the fact that Class

Representatives assisted with the investigation of this action and the drafting of the complaint, were in contact with counsel frequently and stayed informed of the status of the action, including settlement, produced documents—including their personal medical records related to their pregnancies, genetics, and gynecological care—and were willing to sit for a deposition if necessary.

I declare under the laws of the United States of America that the foregoing is true and correct and that this declaration was signed on this 2nd day of July 2025 at San Francisco, California.

By: /s/ Dena S. Sharp
Dena S. Sharp

I declare under the laws of the United States of America that the foregoing is true and correct and that this declaration was signed on this 2nd day of July 2025 at Walnut Creek, California.

By: /s/ L. Timothy Fisher
L. Timothy Fisher

**FILER'S ATTESTATION**

I, Dena C. Sharp, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel listed above have concurred in this filing.

By: /s/ Dena S. Sharp
Dena S. Sharp