EXHIBIT 1

**SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement ("Settlement Agreement," "Settlement" or "Agreement") is entered into by and among Plaintiffs Lisa Cassinis, Sara Martinez, Amanda Law, Lillian Delaurie, Laura Ashley Heryla, Yelena Kreynstein, Chelsey Stephens, and Amanda Davis (collectively, "Plaintiffs"), the Settlement Class (as defined in section 1.35), and Natera, Inc. ("Natera," or "Defendant," and with Plaintiffs, the "Parties"), a Delaware corporation with its principal place of business at 13011 McCallen Pass, Building A, Suite 100, Austin, Texas 78753. The Parties intend this Settlement Agreement to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined in section 1.28) on the terms and conditions of this Agreement. It is subject to the final approval of the United States District Court for the Northern District of California (the "Court").

**RECITALS**

The following recitals are incorporated by reference and are considered part of the Settlement Agreement:

WHEREAS, on February 17, 2022, and February 24, 2022, Plaintiffs Amanda Davis and Amanda Law filed separate class action complaints against Natera arising out of allegations that Natera NIPTs (as defined in section 1.16) are unreliable and inaccurate and that Natera misrepresented and omitted material facts regarding the accuracy of Natera NIPTs. ECF Nos. 1 and 14.

WHEREAS, on April 4, 2022, the Court consolidated the two related class actions pending in the Northern District. ECF No. 17.

WHEREAS, on May 5, 2022, this proposed class action was filed in the Northern District under the caption *In re Natera Prenatal Testing Litigation*, Case 4:22-cv-00985-JST. ECF No. 18.

WHEREAS, Plaintiffs Amanda Davis, Lisa Cassinis, Amanda Law, Sara Martinez, Lillian Delaurie, Laura Ashley Heryla, and Yelena Kreynstein alleged claims against Natera in connection with its Natera NIPTs for fraudulent concealment, breach of implied warranty, unjust enrichment, and violation of state consumer statutes.[1] ECF No. 18.

WHEREAS, on June 29, 2022, Natera moved to dismiss these allegations. ECF No. 31.

WHEREAS, on March 28, 2023, the Court granted in part and denied in part Natera's motion to dismiss. ECF No. 64.

WHEREAS, Plaintiffs filed the First Amended Class Action Complaint ("FAC") on April 27, 2023, adding Plaintiff Chelsey Stephens, and alleging claims against Natera in connection with Natera's NIPTs for violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.), violation of the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, et seq.), violation of the Maryland Consumer Protection Act (Md. Code Ann. Com. Law § 13-101, et seq.), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. § 505/1, et seq.), violation of the Florida Deceptive and Unfair Practices Act (Fla. Stat. §§ 501.201 et seq.), violation of the New Jersey Consumer Fraud Act (N.J.S.A. §§ 56:8-1, et seq.), violation of New York's General Business Law § 349, violation of New York's General Business Law § 350, breach of implied warranty under California, Florida, Illinois, Maryland, New Jersey, New York, and Ohio law; and unjust enrichment under California, Florida, Illinois, Maryland, New York and Ohio law. ECF No. 73.

---

[1] California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.); California Business & Professions Code § 17500, et seq.; California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.); California Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, et seq.); Maryland Consumer Protection Act (Md. Code Ann. Com. Law § 13-101, et seq.); Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. § 505/1, et seq.); Florida Deceptive And Unfair Practices Act (Fla. Stat. §§ 501.201, et seq.); and New Jersey Consumer Fraud Act (N.J.S.A. §§ 56:8-1, et seq.).

WHEREAS, the Parties have conducted discovery, including serving document requests, interrogatories, and requests for admission; and engaged expert witnesses and consultants.

WHEREAS, in October 2024, the Parties engaged in informal attempts at settlement and then agreed to mediation.

WHEREAS, the Parties engaged in settlement negotiations in late 2024, and mediation sessions in January and February 2025 with the Hon. Ronald M. Sabraw (Ret.). These discussions were successful, and the Parties reached an agreement in principle.

WHEREAS, based on their comprehensive examination and evaluation of the law and facts at issue in the Action, the Parties believe that the terms of this Settlement Agreement involve good and fair consideration on behalf of all Parties, and that the terms of the Settlement Agreement are fair, reasonable and adequate with respect to the claims asserted by Plaintiffs and the Settlement Class against Defendant. Class Counsel believe that it is in the best interests of the Settlement Class to settle the Released Claims raised in this Action pursuant to the terms of this Agreement.

WHEREAS, Natera has at all times denied—and continues to deny—any and all alleged wrongdoing. Specifically, Natera denies that it misrepresented or failed to disclose material information regarding its NIPTs and maintains that its NIPTs were and are highly reliable and accurate, and it is prepared to continue its vigorous defense, including at class certification, summary judgment, and trial. Even so, taking into account the uncertainty and risks inherent in class certification, summary judgment, and trial, Natera has concluded that continuing to defend this Action would be burdensome and expensive. Natera believes that it is desirable and beneficial to fully and finally settle and terminate this Action in the manner specified in and upon the terms of this Agreement.

---

WHEREAS, the Parties agree to be bound by the provisions of this Settlement Agreement pending its approval by the Court.

**IT IS THEREFORE HEREBY STIPULATED AND AGREED** by and among Plaintiffs, on behalf of the Settlement Class, and Defendant, by and through their respective counsel, that, subject to final approval of the Court after a hearing as provided for in this Agreement, or as otherwise ordered by the Court, and in consideration of the benefits flowing to the Parties from the Agreement, that the Action and the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

1.    **Definitions**

As used in this Settlement Agreement, the following terms have the special meanings below:

1.1    "Action" means the case entitled *In re Natera Prenatal Testing Litigation*, Case No. 4:22-cv-00985-JST, pending in the United States District Court for the Northern District of California, as well as the two preceding class action lawsuits filed in February 2022.

1.2    "Affiliates," with respect to a party, means (i) all entities now or in the future controlling, controlled by or under common control with that party; (ii) all entities in the past controlling, controlled by or under common control with that party, for the period of time that such control exists or existed; and (iii) predecessors, successors or successors in interest thereof, including all entities formed or acquired by that party in the future that come to be controlled by that party. For purposes of this definition, "control" means possession directly or indirectly of the power to direct or cause the direction of management or policies of a company or entity through

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

the ownership of voting securities, contract, or otherwise, and "entities" includes all persons, companies, partnerships, corporations, associations, organizations, and other entities.

1.3     "Claim(s)" means a Settlement Class Member's written submission that may, if valid, entitle the Settlement Class Member to a Settlement Payment.

1.4     "Claim Form" means a document that a Settlement Class Member must complete and submit to be eligible for a Settlement Payment, substantially in the form of **Exhibit E** to the declaration of Settlement Administrator Simpluris, Inc. ("Simpluris Declaration"), which is attached hereto as **Exhibit 1**.

1.5     "Claimant" means a Settlement Class Member who has submitted a Claim that the Settlement Administrator has determined is valid and timely in accordance with the Notice Plan to be approved by the Court, as described in section 4.

1.6     "Class Counsel" means the law firms of Girard Sharp LLP and Bursor & Fisher, P.A.

1.7     "Class Representative(s)" means each and all of the named Plaintiffs in this Action: Lisa Cassinis, Sara Martinez, Amanda Law, Lillian Delaurie, Laura Ashley Heryla, Yelena Kreynstein, Chelsey Stephens, and Amanda Davis.

1.8     "Court" means the United States District Court for the Northern District of California, the Hon. Jon S. Tigar presiding, or any judge who succeeds him as the judge in this Action.

1.9     "Defendant's Counsel" means the law firm of Reed Smith LLP.

1.10     "Effective Date" means the first day after which all of the following events and conditions of this Settlement Agreement have occurred or have been met: (i) the Court has entered Final Judgment, and (ii) the Final Judgment has become final in that the time for appeal or writ of

certiorari has expired or, if an appeal or writ of certiorari is taken, this Settlement Agreement is affirmed without material modification or the appeal or writ is dismissed or otherwise resolved and the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. In the event of an appeal or other effort to obtain review, the Parties may agree jointly in writing to deem the Effective Date to have occurred; however, there is no obligation to agree to advance the Effective Date.

1.11    "Escrow Agent" means The Huntington National Bank, or such successor escrow agent agreed upon by the Parties or appointed by the Court.

1.12    "Fee and Expense Award" means the amount of attorneys' fees and reimbursement of costs and expenses awarded to Class Counsel by the Court from the Settlement Fund.

1.13    "Final Approval Order" means the final judgment and order to be entered by the Court, following the Final Fairness Hearing, which approves the Settlement, sets the amounts of the Fee and Expense Award and the Service Awards, and dismisses with prejudice the claims of the Class Representatives and of Settlement Class Members who have not excluded themselves from the Settlement.

1.14    "Final Fairness Hearing" means the Court hearing where Plaintiffs will request that the Final Approval Order be entered approving this Agreement as fair, reasonable and adequate, and where Class Counsel will request that the Court approve the Fee and Expense Award and the Service Awards.

1.15    "Group Opt-out" means a request for exclusion submitted on behalf of two or more persons belonging to the Settlement Class, including "mass" or "class" opt-outs.

1.16    "Natera NIPT(s)" means a noninvasive prenatal test offered by Natera under the Panorama™ or Vasistera™ names.

1.17    "Net Settlement Fund" means the Settlement Fund, reduced by the sum of the following, as may be approved by the Court: (1) Notice and Administrative Costs, (2) any payments of Service Awards, and (3) any Fee and Expense Award.

1.18    "Notice" means the notice of this proposed Settlement Agreement and of the Final Fairness Hearing, which will be disseminated to Settlement Class Members in accordance with the Notice Plan.

1.19    "Notice Date" means no later than thirty (30) days after Preliminary Approval.

1.20    "Notice and Administrative Costs" means all reasonable costs and expenses actually incurred by the Settlement Administrator in the dissemination of Notice; the establishment of the Settlement Website; the administrative processing, handling, review, and payment of Claims; and all other expenses reasonably necessary for effective Notice and administration of the Settlement pursuant to Preliminary Approval, subject to the caps set forth in the Simpluris Declaration.

1.21    "Notice Plan" means the plan for disseminating notice of the Settlement to the Settlement Class as approved by the Court, which is set forth in the Simpluris Declaration.

1.22    "Objection" means the written notice that a Settlement Class Member may submit to the Court to object to the Settlement, as described in the Preliminary Approval Order and section 5 of this Agreement.

1.23    "Objection and Exclusion Deadline" means the date set by the Court, at least seventy-five (75) days after the Notice Date and at least thirty-five (35) days after the filing of Class Counsel's motion for a Fee and Expense Award, by which time a Settlement Class Member must submit an Objection or a request to be excluded from the Settlement to the Settlement Administrator.

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

7

1.24    "Opt-Out" means a person who falls within the scope of the Settlement Class, and who has timely and properly exercised their right to exclude themselves from the Settlement Class pursuant to the procedure set forth in the Preliminary Approval Order and section 5 of this Agreement.

1.25    "Opt-Out Procedure" means the procedure for requesting exclusion from the Settlement Class described in section 5.

1.26    "Plan of Allocation" means the plan for allocating the Net Settlement Fund set forth in section 2.3 of this Agreement.

1.27    "Preliminary Approval" means the Court's order finding that the Court will likely be able to approve the Settlement under Fed. R. Civ. P. 23(e)(2) and certify the Settlement Class for purposes of judgment on the proposal. A draft Preliminary Approval Order is attached as **Exhibit 2**.

1.28    "Released Claims" or "Release" means any and all causes of action, suits, claims, liens, demands, judgments, costs, losses, damages (whether actual, compensatory, statutory, punitive, trebled, or of any other type, including damages or losses for overpayments, price premia or emotional distress), obligations, expenses, attorney fees, and all other legal responsibilities of any form or nature whatsoever, including but not limited to all claims arising out of any state, local, or federal statute, ordinance, regulation, or claim at common law or equity (including injunctive relief), whether past, present, or future, known or unknown, asserted or unasserted, fixed or contingent, individual or representative, that the Releasing Parties had, have, or may hereafter have that arise from, are based on, or relate to the facts or claims alleged, or that could reasonably have been alleged, in the Action, including but not limited to all claims regarding the marketing advertising, pricing, billing, ordering, sale, purchase, and/or use of any Natera NIPT, and/or all

claims regarding the accuracy, reliability, merchantability, fitness, efficacy, or performance of any Natera NIPT, including with respect to positive predictive values ("PPVs"), discordant high risk or atypical results (so-called "false positive results"), or other performance criteria, metrics,  or results (the "Released Claims"). Excluded from the Released Claims are any causes of action, suits, claims, liens, demands, judgments, costs, losses, damages, obligations, expenses, or attorney fees, arising out of or related to personal injury.

1.29    "Released Parties" means Natera, Inc. and its present, former, and future, parents, predecessors, successors, affiliates, assigns, subsidiaries, divisions, and related corporate entities, and all of their respective current, future, and former employees, officers, directors, principals, members, partners, shareholders, assigns, agents, trustees, administrators, executors, attorneys, investment bankers, insurers, reinsurers, underwriters, lenders, auditors, financial advisors, service providers, vendors, independent contractors, consultants, and any other representatives of any of these persons and entities, but only in their capacity as such.

1.30    "Releasing Parties" means the Class Representatives and other Settlement Class Members and their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, consultants, independent contractors, insurers, attorneys, accountants, financial and other advisors, lenders, and any other representatives of any of these persons and entities, but only in their capacity as such.

1.31    "Releasing Named Plaintiffs" means the named Plaintiffs in this Action: Lisa Cassinis, Sara Martinez, Amanda Law, Lillian Delaurie, Laura Ashley Heryla, Yelena Kreynstein, Chelsey Stephens, and Amanda Davis, on behalf of themselves and each of their respective insurers, predecessors, successors, assigns, legatees, heirs, attorneys, agents, personal representatives, and all other individuals or entities acting on the Plaintiffs' behalf.

1.32    "Service Award" means the award sought by each Class Representative in consideration for their service during the course of the Action and subsequently approved by the Court. Plaintiffs will not request more than $10,000 per Class Representative. Any such Service Award is separate and apart from any Settlement Payments the Class Representative may receive as a result of submitting a Claim as a Settlement Class Member.

1.33    "Settlement Administrator" means Simpluris, Inc., the firm that will (subject to Court approval) provide Notice and Claims administration services in connection with the Settlement Agreement. The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claims where there is evidence of abuse or fraud.

1.34    "Settlement Amount/Fund" means Eight Million Two Hundred Fifty Thousand Dollars ($8,250,000), which shall be paid to the Escrow Agent by Defendant within seven (7) business days of Preliminary Approval of the Settlement.

1.35    "Settlement Class" means all individuals in the United States who purchased at least one Natera NIPT during the applicable Class Period.[2]

1.36    "Settlement Class Member" means any natural person who falls within the Settlement Class.

---

[2] Persons whose Natera NIPTs were paid for entirely by insurance or some other third-party source are excluded from the Settlement Class. Also excluded from the Settlement Class are (1) any judge or magistrate presiding over this Action and members of their families, (2) Natera and its subsidiaries, parent companies, successors, predecessors, and any entity in which Natera or its parents have a controlling interest, and their current and former officers, directors, and employees, (3) counsel of record (and their respective law firms) for the parties, (4) persons who properly execute and file a timely request for exclusion, and (5) the legal representatives, successors or assigns of any such excluded persons.

1.37    "Settlement Class Period" means the period starting at the dates in the table below, varying by state, through the date the Court grants Preliminary Approval of this Settlement.

| States(s) | Class Period Start Date |
|---|---|
| Ohio | February 17, 2016 |
| New Jersey | May 5, 2016 |
| Florida | February 24, 2017 |
| New York & Illinois | April 27, 2017 |
| All other states | February 17, 2018 |

1.38    "Settlement Payment" means the amount a Claimant with a Valid Claim shall receive from the Net Settlement Fund in accordance with the Plan of Allocation.

1.39    "Settlement Website" means a website created and maintained by the Settlement Administrator for the purpose of providing the Settlement Class with information about the Settlement. This website will allow Settlement Class Members to submit Claims and update their contact information and payment method. The Settlement Website will be maintained from no later than one day before the first Notice is disseminated until thirty (30) days after Plaintiffs file their notice of Post Distribution Accounting in accordance with the Northern District of California's Procedural Guidance for Class Action Settlements.

1.40    "Valid Claim" means a Settlement Class Member's written Claim that the Settlement Administrator has deemed valid and timely and accepted for Settlement Payment.

2.    **Settlement Relief – Monetary Relief**

2.1    <u>Settlement Fund</u>. Defendant's total financial commitment under this Agreement shall be $8,250,000.00, to be paid in full into an interest-bearing escrow account (the "Settlement Fund"). Within seven (7) business days after the entry of the Preliminary Approval Order, Defendant shall pay, or cause to be paid, the Settlement Amount to the Escrow Agent in accordance with the instructions to be provided by the Escrow Agent. Within seven (7) business days of

execution of this Agreement, the Escrow Agent will furnish adequate payment instructions consisting of wire transfer instructions, instructions for payment by check, and a completed IRS form W-9 for the Settlement Amount, including an address and tax ID number. The interest from this escrow account will accrue in the Settlement Fund.

2.2    If the Court does not grant final approval of the Settlement, or the Settlement is terminated or fails to become effective for any reason, the Settlement Amount and interest will be returned by the Settlement Administrator to Defendant within twenty-one (21) business days of the triggering event, less the portion of the amount applied to Notice and Administrative Costs (including taxes). At the request of Defendant, the Settlement Administrator shall apply for any tax refund owed on the amounts in the Settlement Fund and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s) for such refund to Defendant.

2.3    <u>Plan of Allocation</u>. Distributions to the Settlement Class shall occur in accordance with this Plan of Allocation as described below.

2.3.1    Settlement Class Members who submit a Valid Claim without proof of out-of-pocket costs for a Natera NIPT shall receive, subject to the available Net Settlement Fund, $30 maximum (the "No Proof Maximum").

2.3.2    Settlement Class Members who submit a Valid Claim with supporting documentation establishing out-of-pocket costs for a Natera NIPT greater than $300, shall receive, subject to the available Net Settlement Fund, 10% of such documented out-of-pocket costs.

2.3.3    Each Settlement Class Member's payment shall be increased or decreased on a pro rata basis subject to the No Proof Maximum and the available Net Settlement Fund but shall not exceed the amount a Settlement Class Member paid out of pocket.

2.3.4    The Settlement Administrator shall cross-reference the identity of each Settlement Class Member who submits a claim against Settlement Class Member contact information to identify fraudulent claims.

2.3.5    If, six months after the distribution of the Net Settlement Fund, any distributable balance remains in the Net Settlement Fund because of uncollected payments, uncashed checks or otherwise, then that balance shall, if economically feasible and subject to Court approval, be redistributed among those Claimants who collected payments and/or cashed checks.

2.3.6    If (1) Class Counsel determines that a redistribution would be uneconomical or (2) six months after redistribution any balance remains in the Net Settlement Fund and Class Counsel determines that a further redistribution would be uneconomical, Class Counsel shall seek an order approving the contribution of the balance to one or more non-sectarian, not-for-profit, 501(c)(3) organizations. Any proposed recipient shall be independent of Class Counsel so that Class Counsel does not derive a direct or indirect benefit from the selection of such organization as the recipient of a charitable contribution. Any motion seeking an order to approve the contribution will detail the means by which the proposed recipient(s) were selected.

2.4    <u>No reversion</u>. If the Effective Date occurs, there will be no reversion to Defendant based on the level of claims made by Settlement Class Members. This is a common fund settlement. In no event shall any money in the Settlement Fund remaining after distribution to Settlement Class Members be returned to Defendant.

2.5    <u>Escrow</u>. The Escrow Agent will place the Settlement Fund in an interest-bearing account created by order of the Court intended to constitute a qualified settlement fund ("QSF") within the meaning of Section 1.468B-1 of the Treasury Regulations, and shall remain subject to the continuing jurisdiction of the Court.

---

2.6     Defendant's transfers of the Settlement Amount to the Settlement Fund in the custody of the Escrow Agent shall constitute full and complete satisfaction of its obligations under this Agreement. Following the Defendant's transfers of the Settlement Amount to the Settlement Fund, Released Parties shall not have any liabilities, obligations or responsibilities with respect to the payment, disbursement, disposition, or distribution of the Settlement Fund. Plaintiffs, Class Counsel, and Settlement Class Members shall look solely to the Settlement Fund for settlement and satisfaction against any Released Parties of all Released Claims; Fee and Expense Award; Notice and Administrative Costs; Service Awards; and all administrative or other costs and expenses arising out of or related to the Action or this Settlement.

2.7     <u>Enforcement</u>. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement. To the extent permitted by law, this Agreement may be pleaded or invoked as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding instituted, prosecuted or attempted regarding the Released Claims.  In any action or proceeding involving the enforcement of the terms of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees. The Releasing Parties' Release shall not bar a claim, complaint, action, or proceeding for breach of this Settlement Agreement.

2.8     <u>Taxes</u>. Any tax liability, together with any interest or penalties imposed thereon, incurred by Defendant or any Releasing Party resulting from income earned on the Settlement Fund or payments made from the Settlement Fund (or the receipt of any payment under this paragraph) shall be reimbursed from the Settlement Fund in the amount of such tax liability, interest or penalties promptly upon and in no event later than five (5) business days after Defendant's or any Releasing Party's written request to the Settlement Administrator.

2.9    It is each Settlement Class Member's responsibility to pay any and all valid and enforceable liens, reimbursement claims, or encumbrances held or asserted by any private or governmental lienholders against them.

2.10    Disposition of the Settlement Fund. The Settlement Fund shall be applied as follows:

(i)    to pay approved Notice and Administrative Costs;

(ii)    to pay the taxes described herein; and

(iii)    as soon as practicable after the Effective Date, to distribute the Net Settlement Fund to Claimants per the Plan of Allocation and to pay any Fee and Expense Award and Service Awards in accordance with the Final Approval Order or any subsequent order of the Court.

2.11    Defendant shall have no liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, the Escrow Agent, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation approved by the Court; (iv) the determination, administration, or calculation of claims to be paid to Claimants from the Settlement Fund; or (v) the payment or withholding of taxes or related expenses, or any expenses or losses incurred in connection therewith. No person shall have any claim of any kind against Defendant with respect to the matters set forth in sections 2.3, 2.5, 2.8, 2.9, and 2.10 hereof; and the Releasing Parties, Releasing Named Plaintiffs, and Class Counsel release Defendant, from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

2.12    No person shall have any claim against Class Representatives, Class Counsel or the Settlement Administrator, or any other person designated by Class Counsel, based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein, the Plan of Allocation approved by the Court, or further order(s) of the Court.

## 3.    Settlement Relief – Non-Monetary Relief

3.1    Defendant will add the following italicized language below, or similar language to be negotiated between the parties, to its webpage currently located at https://www.natera.com/womens-health/panorama-nipt-prenatal-screening/ (though, for the avoidance of doubt, the language will be unitalicized when it goes live on the website):

> "A high risk result means that your pregnancy has a higher chance of having a specific genetic condition. However, you cannot know for sure if your baby has that condition based upon the screening result alone. *The test does NOT tell with certainty if a fetus is affected, and only tests for the conditions ordered by the healthcare provider. High risk test results need diagnostic confirmation by alternative testing method.* All medical decisions should be made after discussion with your healthcare provider…"

A change in the URL path of https://www.natera.com/womens-health/panorama-nipt-prenatal-screening/ shall not relieve Natera of its obligation to include the aforementioned language on this webpage. Natera shall have discretion regarding the implementation and manner of implementation of the changes described in this section 3.1, provided the italicized language above is reasonably legible to users. This Agreement creates no obligation on Defendant's part to continue to offer any Natera NIPTs or to maintain, display, or allow external access to webpages in connection with Natera NIPTs. Defendant represents that it has no present intention of taking down the Panorama NIPT webpage. Except as expressly set forth in this section 3.1, Defendant is not required to make any other changes with respect to its business practices.

3.2    <u>Timing of Non-Monetary Relief</u>. Defendant will add the language specified in section 3.1 within thirty (30) days following the Effective Date.

**4.       Settlement Notice and Administration**

4.1    The Settlement Administrator will administer the Notice Plan and the Plan of Allocation approved by the Court.

4.2    Class Counsel and the Settlement Administrator shall be responsible for the Notice Plan and the Plan of Allocation. Class Counsel has conferred with and in good faith considered the input of Defendant and Defendant's Counsel concerning the proposed Notice Plan (including the content of notices, claims form, and Opt-Out and Objection Procedures), the Plan of Allocation, and expenditures for administering the Notice Plan and Plan of Allocation, each of which is reflected in the Simpluris Declaration (attached as **Exhibit 1**) or the exhibits attached thereto.

4.3    Within ten (10) days of Preliminary Approval, Defendant agrees to provide to the Settlement Administrator reasonably available information from Defendant's files regarding the number of Settlement Class Members and their name, email and/or physical addresses, subject to the Data Security Agreement between Defendant and the Settlement Administrator. Pursuant to the Data Security Agreement, the Settlement Administrator shall keep any Settlement Class Member data or personal information obtained from Defendant, including the identities and the mailing and email addresses of all Settlement Class Members, strictly confidential, and will comply with all applicable provisions of the Health Insurance Portability and Accountability Act and other applicable privacy laws. No Settlement Class Member data will be shared with the Class Representatives or Class Counsel. The Settlement Administrator may not use such information for any purpose other than effectuating the terms of the Notice Plan and Plan of Allocation.

---

4.4     The Settlement Administrator shall be responsible for distributing the Settlement Fund to the Settlement Class Members following the occurrence of the Effective Date pursuant to the procedures contained in the Plan of Allocation.

**5.     Objections and Exclusions**

5.1     All persons who wish to object to the Settlement shall be advised of the process for doing so. The procedure for objecting to the Settlement (the "Objection Procedures") must be followed to validly object, and shall be set forth in the Preliminary Approval Order and subject to the Court's approval.

5.2     All objections to the Settlement that fail to satisfy the requirements of the Objection Procedures, or any additional requirements the Court may impose, shall be void.

5.3     Objection Procedures. Any Settlement Class Member who wishes to object to the Settlement must provide a written objection to the Court and the Settlement Administrator subject to the specifications set out in the Preliminary Approval Order.

5.4     Opt-Out Procedure. All persons who wish to exclude themselves from the Settlement Class shall be advised of the process for doing so. The procedure for requesting exclusion from the Settlement Class (the "Opt-Out Procedure") must be followed to validly request exclusion and shall be set forth in the Preliminary Approval Order, and shall be subject to the Court's approval.

5.5     All requests to Opt-Out of the Settlement Class that fail to satisfy the requirements of the Opt-Out Procedure, or any additional requirements the Court may impose, shall be void. Each person who submits an opt-out request must do so individually. Group Opt-outs are prohibited.

5.6    Any valid Opt-Out shall not be bound by this Settlement Agreement; shall not be eligible to apply for or receive any benefit under the terms of this Settlement Agreement; and shall not be entitled to submit an Objection to this Settlement Agreement.

## 6.    Releases

6.1    <u>No Admission of Liability</u>. This Settlement Agreement is made in compromise of a dispute and to avoid the burden, expense, and uncertainty of further litigation. Neither the Agreement nor anything that the Parties stated or did during the negotiation of the Agreement shall be construed or used in any manner as an admission of liability or evidence of any Party's fault, liability, or wrongdoing. Defendant maintains that its noninvasive prenatal screening tests were and are highly reliable and accurate, and denies that it failed to disclose material information regarding its tests. Defendant maintains that its noninvasive prenatal screening tests, and these tests' reliability and accuracy, have been established through multiple clinical studies, and results from those studies and other research regarding the tests are available in nearly 50 peer-reviewed publications. Defendant expressly denies any liability or wrongdoing whatsoever and denies that it failed to disclose material information regarding tests or that any of its marketing materials, advertisements or any other statements concerning the tests or the results thereof, whether written, electronic or oral, were in any way misleading or confusing. Defendant further denies that Plaintiffs' claims are susceptible to class treatment or that they can be managed in a class proceeding except for settlement purposes.

6.2    Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement (a) is, may be deemed, or shall be used, offered or received against Defendant or the Released Parties, or each

or any of them, as an admission, concession or evidence of the validity of any Released Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law, or of any alleged wrongdoing, liability, negligence, or fault of Defendant or the Released Parties. However, the Settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement. Further, if this Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Approval Order in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

6.3    <u>Released Claims</u>. Upon the Effective Date of this Agreement, all the Releasing Parties shall release, forever discharge, and will not in any manner pursue this Action, and shall be forever barred from asserting, instituting, or maintaining against the Released Parties, any and all Released Claims, as defined in section 1.28 of this Agreement.

6.4    For avoidance of doubt, the Released Claims do not include (or release) personal injury claims. However, to the extent any Settlement Class Member asserts a cause of action or claim that would otherwise fall within the scope of the release but asserts the right to recover both damages caused by personal injury and some other type of damages (for example, but not limited to, economic or statutory damages), that cause of action or claim will survive this release only to the extent of damages caused by personal injury.

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

6.5    In connection with the Released Claims, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of section 1542 of the California Civil Code (and equivalent, comparable, or analogous provisions of the laws of the United States or any state or territory thereof, or the common law), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

6.6    The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any unknown claims they may have. Further, Releasing Parties agree that this waiver is an essential and material term of the Settlement Agreement, and that without such waiver, Natera would not have accepted or agreed to the Settlement Agreement.

6.7    The Releasing Parties agree and covenant not to sue any Released Parties with respect to any Released Claims or to assist others in doing so, and agree to be forever barred from doing so in any court of law or equity or any other forum.

## 7.    Court Approval of the Settlement

7.1    <u>Cooperation to Obtain Court Approval</u>. The Parties will jointly take all reasonable steps necessary to secure the Court's approval of this Settlement. Class Counsel will draft and file the motions for Preliminary Approval and final approval. Defendant's Counsel will be provided with advance copies of these papers prior to filing to provide comments that Class Counsel will

consider. Class Counsel will be provided with advance copies of any papers in support of Preliminary Approval or final approval Defendant proposes to file prior to filing.

7.2    <u>Settlement Class</u>. The Parties agree that, for purposes of this Settlement, this Action should be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only, and that Class Counsel shall serve as counsel for the Settlement Class.

7.3    <u>Preliminary Approval</u>. Within seven (7) days of executing this Agreement, Plaintiffs, in consultation with Defendant, will move the Court for an order:

(i)    Finding that the Court will likely be able to approve the Settlement under Rule 23(e)(2);

(ii)    Finding that the Court will likely be able to certify the Settlement Class for purposes of entering the Final Approval Order; and

(iii)    Finding that Notice, including the form, manner, and content of the various types of notice is justified; and

(iv)    Placing the Final Fairness Hearing on the Court's calendar.

7.4    <u>Final Approval</u>. At least thirty-five (35) days before the Objection and Exclusion Deadline, Plaintiffs, in consultation with Defendant, shall move the Court for the Final Approval Order seeking:

(i)    Final Approval of the Settlement, approving the terms of this Settlement as fair, reasonable, and adequate and in the best interest of Settlement Class Members;

(ii)    A finding that the Notice complied with the Settlement Agreement, all applicable law, and due process;

      (iii)    Distribution of the Settlement Fund and approval of the Settlement Payments; and

      (iv)    Dismissal of the Action with prejudice and entry of a Final Approval Order.

     7.5    <u>Effect If Settlement Not Approved or If Terminated</u>. The Settlement Agreement is being entered into for settlement purposes only. If the Court does not grant Preliminary Approval, does not issue a Final Approval Order, if the Effective Date does not occur for any reason, or the Agreement is terminated, this Settlement Agreement will be deemed null and void ab initio. In that event:

      (i)    The Preliminary Approval Order and the Final Approval Order, to the extent they have been entered by the Court, will be vacated by operation of law;

      (ii)    The Parties will be restored to their respective positions immediately preceding execution of the Agreement, and any intervening Court rulings or decisions shall be vacated;

      (iii)    No term or condition of the Agreement, or any draft thereof, or any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect; nor shall any such matter be admissible in evidence for any purpose in the Action or any other proceeding; nor shall any such matter be used in the Action for any purpose whatsoever;

      (iv)    Defendant will retain all of its rights to object to any attempt by Plaintiffs to reference, cite to, or rely upon, in any way, the Agreement or any factual or legal statement or conclusion within it, including as to the feasibility of the maintenance of the Action as a class action.

7.6 <u>Modifications Suggested or Ordered by a Court</u>. If the Court suggests any modifications to the Agreement, the Parties shall, working in good faith and consistent with the Agreement, endeavor to cure any such deficiencies identified by the Court. However, the Parties shall not be obligated to make any additions or modifications to the Agreement that would affect its material terms, including the benefits provided to Settlement Class Members, the cost to or burden on Defendant, the content or extent of Notice required to Settlement Class Members, or the scope of any of the releases contemplated in this Agreement. If any Court orders or proposes such additions or modifications, the Parties will each have the right to terminate the Settlement Agreement within seven (7) days from the date of the Court's order or proposal. If any Party elects to terminate the Settlement Agreement pursuant to this section, the Agreement will be deemed null and void ab initio and the provisions of section 2.2 and 7.5 will apply.

7.7 Notwithstanding the foregoing, the Parties will not be entitled to terminate this Settlement Agreement based on any order relating to Class Counsel's anticipated motion for a Fee and Expense Award or to Plaintiffs' anticipated motion for Service Awards for the Class Representatives, nor any appeal from such order or reversal or modification thereof.

7.8 <u>Termination by Defendant</u>. Defendant shall have the right and sole discretion, but not the obligation, to terminate the Settlement Agreement if more than 2% of the Settlement Class validly Opt-Out from the Settlement. Notification of intent to terminate the Settlement Agreement must be provided within ten (10) days from the date that the Settlement Administrator provides a list of exclusions following expiration of the Objection and Exclusion Deadline.

**8.    Class Counsel's Fees, Costs, and Expenses**

8.1 <u>Fee and Expense Award</u>. At least thirty-five (35) days before the Objection and Exclusion Deadline, Class Counsel will file a motion with the Court seeking no more than 30% of

the Settlement Fund as payment of their reasonable attorneys' fees. In addition, Class Counsel will seek reimbursement of actual costs and expenses, including experts and consultants, incurred in connection with prosecuting this Action. Class Counsel's motion for attorneys' fees, costs, and expenses will also be posted on the Settlement Website.

8.2     The Fee and Expense Award is within the sole discretion of the Court, and if the award is less than the amount sought by Class Counsel, this will not be a basis for terminating or setting aside the Settlement. Any difference in the amount sought and the amount ultimately awarded shall remain in the Settlement Fund for distribution to Settlement Class Members.

8.3     Defendant agrees not to dispute Class Counsel's ability to apply to the Court for a reasonable Fee and Expense Award, to be deducted from the Settlement Amount.

8.4     <u>Timing of Payment</u>. If awarded by the Court, the Fee and Expense Award shall be payable from the Settlement Fund within five (5) business days after the Effective Date.

8.5     <u>Distribution of Fee and Expense Award</u>. Class Counsel shall have sole responsibility and discretion to distribute the Fee and Expense Award. Class Counsel are aware of no attorney or law firm other than Girard Sharp LLP and Bursor & Fisher, P.A. that may claim they are owed attorneys' fees, costs, or expenses under the terms of this Settlement.

## 9.     Service Awards

9.1     <u>Generally</u>. Class Counsel will seek Service Awards for each Class Representative not to exceed $10,000 per Class Representative in consideration for their service during the course of the Action and commensurate with their participation in the Action. Defendant agrees not to oppose Class Counsel's applications for service awards that do not exceed this amount. Any such Service Awards are separate and apart from any Settlement Payments the Class Representatives may receive as a result of submitting Claims as Settlement Class Members.

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

9.2    <u>Motion for Service Awards</u>. Class Counsel will move for Service Awards at the same time it files its motion for Fee and Expense Award, and that information will also be posted on the Settlement Website.

9.3    <u>No Condition of Support</u>. Each Class Representative shall receive any Service Award they are awarded by the Court, irrespective of whether they support the terms of the Settlement.

9.4    <u>Payment of Service Awards</u>. If awarded by the Court, the Service Awards shall be payable from the Settlement Fund. Class Counsel shall furnish the Settlement Administrator with all necessary payment, routing, and tax information for the Class Representatives to facilitate the transfer. The Service Awards shall be paid within ten (10) days of the Effective Date.

**10.    Miscellaneous Terms**

10.1    <u>Construction and Interpretation</u>. The following additional terms shall govern the construction and interpretation of this Agreement.

10.2    <u>Authority to Execute</u>. Each Party executing this Agreement warrants (a) that he, she, or it has all requisite power and authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein, (b) that the execution, delivery and performance of this Settlement Agreement and the consummation by it of the actions contemplated herein have been duly authorized on the part of each Party, and (c) that this Settlement Agreement has been duly and validly executed and delivered by each Party and constitutes its legal, valid, and binding obligation. Each Party executing this Agreement further warrants that he, she, or it has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

10.3    <u>Knowledge and Advice of Counsel</u>. Counsel for the Parties execute this Agreement freely and voluntarily and without acting under any duress or in reliance upon any threat made by or on behalf of any other Party. Each Party has consulted with or has had an opportunity to consult with counsel of its own choice about the legal effect of entering into this Agreement, and executes this Agreement being fully informed as to its terms, content and legal effect.

10.4    <u>Entire Agreement</u>. This Agreement, including all exhibits hereto, constitutes the complete, final and exclusive embodiment of the entire agreement among Plaintiffs, the Settlement Class, and Defendant with regard to the subject matter hereof, and supersedes all previous or contemporaneous agreements between Plaintiffs, the Settlement Class, and Defendant relating to the Agreement's subject matter. It is entered into without reliance on any statements, promises, warranties or representations, written or oral, other than those expressly contained herein.

10.5    <u>No Construction Against Any Party</u>. The terms of the Settlement Agreement have been negotiated at arm's-length among knowledgeable parties represented by experienced counsel. The Parties agree that the normal rule of construction that any ambiguity in a document is construed against the drafting party shall not apply to the interpretation or enforcement of the Settlement Agreement, as the Parties each participated in the drafting of the Settlement Agreement.

10.6    <u>Headings and Captions</u>. The captions or headings in this Agreement are inserted for convenience, reference, and identification purposes only, and shall neither control, define, limit, nor affect any provisions of this Agreement.

10.7    <u>Governing Law</u>. All claims arising out of or relating to this Agreement will be governed, interpreted, enforced, construed and controlled by the laws of the State of California, without regard to principle of conflicts or choice of law provisions.

10.8    <u>Specific Prohibitions</u>. The following specific prohibitions shall apply to the Settlement Agreement as follows:

10.9    <u>Assignment</u>. Plaintiffs represent and warrant that they have not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other person or party and that they are fully entitled to release the same. The Settlement Agreement, including any of the rights and duties of each Party under the Agreement, may not be assigned without prior written approval by the other Parties. This Settlement Agreement will be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

10.10    <u>No Waiver</u>. No Party will be treated as having waived any rights or privileges, including attorney-client privilege, as the result of the Settlement Agreement. Additionally, a waiver of any breach of the Settlement Agreement by any Party shall not be deemed to be a waiver by any Party of any other breach of the Agreement.

10.11    <u>Execution in Counterparts</u>. This Agreement may be executed by the Parties in counterparts and exchanged by electronic means, including facsimile, PDF, and other electronic means, with the same effect as if all Parties had signed the same instrument.

10.12    <u>Amendments</u>. Any amendment must be in writing, signed by Class Counsel and Defendant's Counsel or Defendant, and expressly state that it is amending the Settlement Agreement.

10.13    <u>Representations and Warranties.</u> Class Counsel represent that they do not have any clients, or have knowledge of any potential clients, and have no present intent to solicit other clients, with claims or potential claims against the Released Parties aside from Plaintiffs and Settlement Class Members. Plaintiffs and Class Counsel represent and warrant that they are not

aware of any other potential plaintiff or Settlement Class Member or any attorney who intends to make demands or bring litigation against any of the Released Parties.

10.14    <u>Deletion of Documents</u>. Following final approval of the Settlement, the Parties shall comply with the terms of the Protective Order, including all requirements governing the return or destruction of protected materials.

10.15    <u>Confidentiality</u>. The Parties, Class Counsel, and Defendant's Counsel agree that until publication of this Settlement Agreement by submission to the Court, the terms of this Settlement Agreement and all associated documents and communications, including the negotiations leading to the execution of the Settlement Agreement and all submissions and arguments related to the mediation proceedings, shall not be disclosed by the Parties, Class Counsel, or Defendant's Counsel other than as necessary to finalize the Settlement. Upon publication of the Settlement Agreement by submission to the Court, the nondisclosure obligations set forth in this paragraph will no longer apply to the as-filed Settlement Agreement or the terms thereof, but such obligations will continue to apply to all other materials and information covered by this paragraph, including but not limited to any negotiations, communications, or drafts leading to the execution of this Settlement Agreement.

10.16    <u>No Publicity</u>. Other than to a court in any case filing and to effectuate the Notice Plan, the Parties, Class Counsel and Defendant's Counsel agree not to initiate, authorize, or approve any publicity, press releases, advertising, or internet commentary regarding the Settlement or the Action.

10.17    <u>Attorneys' Fees</u>. Except as otherwise provided herein, including in section 8, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action and the Settlement.

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

10.18   <u>No Tax Advice</u>. The Parties acknowledge and agree that no opinion concerning the tax consequences of the proposed Settlement to Settlement Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Settlement Agreement. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

* * * * *

Remainder of Page Intentionally Left Blank.  Signature Page to Follow.

## **SIGNATORIES**

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and executed this Agreement, approved as to form and content by its duly authorized counsel of record.

Plaintiff Lisa Cassinis                                  Defendant Natera, Inc.

_____                      _Russ Farr_____

Date: _____                     Date: __07/02/2025_____

Plaintiff Sara Martinez

_____                      REED SMITH LLP
                                                                        By: Terence N. Hawley

Date: _____                     _____

Plaintiff Amanda Law
                                                                        Date: __07/02/2025_____

_____                      *Attorneys for Defendant Natera, Inc.*

Date: _____

Plaintiff Lillian Delaurie

_____

Date: _____

Plaintiff Laura Ashley Heryla

_____

Date: _____

Plaintiff Yelena Kreynstein

_____

Date: _____

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

## SIGNATORIES

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and executed this Agreement, approved as to form and content by its duly authorized counsel of record.

Plaintiff Lisa Cassinis

_____

Date: 7/2/2025

Plaintiff Sara Martinez

_____

Date: _____

Plaintiff Amanda Law

_____

Date: _____

Plaintiff Lillian Delaurie

_____

Date: _____

Plaintiff Laura Ashley Heryla

_____

Date: _____

Plaintiff Yelena Kreynstein

_____

Date: _____

Defendant Natera, Inc.

Agreed to: _____

Date: _____

REED SMITH LLP
By: Terence N. Hawley

*Attorneys for Defendant Natera, Inc.*

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

## SIGNATORIES

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and executed this

Agreement, approved as to form and content by its duly authorized counsel of record.

Plaintiff Lisa Cassinis                         Defendant Natera, Inc.

_____        Agreed to: _____

Date: _____        Date: _____

Plaintiff Sara Martinez                         REED SMITH LLP
                                                By: Terence N. Hawley
_____
48C660741C57489...                              *Attorneys for Defendant Natera, Inc.*
Date: 6/30/2025 _____

Plaintiff Amanda Law

_____

Date: _____

Plaintiff Lillian Delaurie

_____

Date: _____

Plaintiff Laura Ashley Heryla

_____

Date: _____

Plaintiff Yelena Kreynstein

_____

Date: _____

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

## SIGNATORIES

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and executed this Agreement, approved as to form and content by its duly authorized counsel of record.

Plaintiff Lisa Cassinis                              Defendant Natera, Inc.

_____              Agreed to: _____

Date: _____              Date: _____

Plaintiff Sara Martinez                              REED SMITH LLP
                                                     By: Terence N. Hawley
_____
                                                     *Attorneys for Defendant Natera, Inc.*
Date: _____

Plaintiff Amanda Law

_____
Amanda Law (Jun 27, 2025 10:58 CDT)
                    06/27/2025
Date: _____

Plaintiff Lillian Delaurie

_____

Date: _____

Plaintiff Laura Ashley Heryla

_____

Date: _____

Plaintiff Yelena Kreynstein

_____
Yelena Kreynstein (Jun 27, 2025 18:18 EDT)

                    Jun 27, 2025
Date: _____

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

31

## SIGNATORIES

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and executed this

Agreement, approved as to form and content by its duly authorized counsel of record.

Plaintiff Lisa Cassinis                          Defendant Natera, Inc.

_____                 Agreed to: _____

Date: _____                 Date: _____

Plaintiff Sara Martinez                          REED SMITH LLP
                                                 By: Terence N. Hawley
_____

Date: _____                 *Attorneys for Defendant Natera, Inc.*

Plaintiff Amanda Law

_____

Date: _____

Plaintiff Lillian Delaurie
                                    DocuSigned by:
_____
                                    ——7BD69DDF83F14FC...

Date: 6/30/2025 _____

Plaintiff Laura Ashley Heryla

_____

Date: _____

Plaintiff Yelena Kreynstein

_____

Date: _____

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

## **SIGNATORIES**

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and executed this

Agreement, approved as to form and content by its duly authorized counsel of record.


Plaintiff Lisa Cassinis                                    Defendant Natera, Inc.

_____            Agreed to: _____

Date: _____             Date: _____

Plaintiff Sara Martinez                                    REED SMITH LLP
                                                           By: Terence N. Hawley
_____

Date: _____             *Attorneys for Defendant Natera, Inc.*

Plaintiff Amanda Law


_____

Date: _____

Plaintiff Lillian Delaurie


_____

Date: _____

Plaintiff Laura Ashley Heryla

*Laura Ashley Heryla*
0221A6E7AEE34F6...

Date: 6/27/2025  _____

Plaintiff Yelena Kreynstein


_____

Date: _____

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

Plaintiff Chelsey Stephens

_Chelsey Stephens (Jun 30, 2025 14:39 EDT)_

Date: 06/30/2025 _____

Plaintiff Amanda Davis

_____

Date: _____

GIRARD SHARP LLP
By: Dena C. Sharp

Agreed to: _____

Date: _____

BURSOR & FISHER, P.A.
By: L. Timothy Fisher

Agreed to: _____
_L. Timothy Fisher (Jul 2, 2025 10:18 AKDT)_

Date: 07/02/2025 _____

*Attorneys for Plaintiffs and the Proposed Class*

Plaintiff Chelsey Stephens

_____

Date: _____

Plaintiff Amanda Davis

_____

Date: 6/27/2025
_____

GIRARD SHARP LLP
By: Dena C. Sharp

Agreed to: _____

Date: _____

BURSOR & FISHER, P.A.
By: L. Timothy Fisher

Agreed to: _____

Date: _____

*Attorneys for Plaintiffs and the Proposed Class*

---

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 4:22-CV-00985-JST

Plaintiff Chelsey Stephens

_____

Date: _____


Plaintiff Amanda Davis

_____

Date: _____




GIRARD SHARP LLP
By: Dena C. Sharp

Agreed to: _Dena C. Sharp_____

Date: 7/2/2025_____

BURSOR & FISHER, P.A.
By: L. Timothy Fisher

Agreed to: _____

Date: _____

*Attorneys for Plaintiffs and the Proposed Class*