Dena C. Sharp (SBN 245869)
Kyle P. Quackenbush (SBN 322401)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
kquackenbush@girardsharp.com

L. Timothy Fisher (SBN191626)
**BURSOR & FISHER, P.A.**
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ltfisher@bursor.com

Max S. Roberts (SBN 363482)
Julian C. Diamond (*pro hac vice*)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
mroberts@bursor.com
jdiamond@bursor.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE NATERA PRENATAL TESTING LITIGATION

Case No. 4:22-cv-00985-JST

**[~~PROPOSED~~] ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

HON. JON S. TIGAR

On June 22, 2026, Court-appointed counsel in this matter ("Class Counsel"[1]) moved for an award of attorneys' fees, expenses, and service awards from the Settlement Fund. Having considered the motion and related briefing, and good cause appearing, the Court **GRANTS** the motion as to attorneys' fees and expenses and **GRANTS IN PART** the requested service awards.

This litigation began in February 2022, when Plaintiffs Amanda Davis and Amanda Law filed separate class action complaints against Natera, Inc., alleging Natera falsely advertised its Natera NIPTs. *See* ECF Nos. 1 and 12. On April 5, 2022, the Court consolidated the two related class actions pending in the Northern District of California. ECF No. 17. On May 5, 2022, Plaintiffs Davis and Law, along with Plaintiffs Sara Martinez, Lillian Delaurie, Laura Ashley Heryla, and Yelena Kreynstein, filed a consolidated class action complaint alleging claims against Natera in connection with its Natera NIPTs for fraudulent concealment, breach of implied warranty, unjust enrichment, and violation of state consumer statutes. ECF No. 18.

Natera moved to dismiss the consolidated complaint, and on March 28, 2023, the Court denied the motion in part. ECF No. 64. Plaintiffs thereafter filed a First Amended Consolidated Class Action Complaint,[2] and the Parties engaged in extensive fact and expert discovery over the ensuing two years—including Natera's production of approximately 27,000 documents, written discovery propounded by both sides, and the litigation of several discovery disputes before the Court. Natera has maintained at all times that its noninvasive prenatal screening tests were and are highly reliable and accurate, and denies that it failed to disclose material information regarding its tests.

In February 2025, after settlement negotiations with the assistance of Honorable Ronald M. Sabraw, the Parties reached a settlement agreement that included a cash payment of $8,250,000 and non-monetary relief. In a separate order, the Court found the Settlement to be fair, reasonable, and adequate, and certified the Settlement Class.

[1] All capitalized terms not otherwise defined herein shall have the same meaning as the Settlement Agreement.

[2] The complaint included Plaintiff Chelsey Stevens. ECF No. 73.

Class Counsel now request an award of attorney fees in the amount of 30% of the Settlement Fund ($2,475,000), plus accrued proportional interest. Class Counsel also seek reimbursement of $200,051.97 in total expenses. Lastly, Class Counsel request service awards of $10,000 for each Class Representative (a combined $80,000).

## I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

In the Ninth Circuit, there are two ways of assessing requests for attorneys' fees in common fund cases: the percentage-of-the-recovery method (where the fee is evaluated as a percentage of the common fund) and the lodestar method (where the fee is evaluated by reference to counsel's lodestar). *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). District courts have discretion concerning which method to apply in a particular case. *See Bluetooth*, 654 F.3d at 942. As set forth below, an award of 30% of the Settlement Fund plus accrued interest is reasonable under either approach here.

### A. The Percentage-of-the-Recovery Method Supports the Requested Fees

When using the percentage-of-the-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award[.]" *Bluetooth*, 654 F.3d at 942. But "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). In determining whether to depart from the 25% benchmark, some courts have considered the following: (1) the result achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee;[3] and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048–50 (9th Cir. 2002) (finding no abuse of discretion where the district court relied on these factors in awarding 28% of the fund). The foregoing factors weigh in favor of a 30% fee award, particularly

[3] Given that most class actions are litigated on contingency, the Court finds that this factor does not usually weigh in favor of a higher award.

given the case's complexity and the negative multiplier under the lodestar method. *Terraza v. Safeway Inc.*, 2021 WL 11607173, at *3 (N.D. Cal. July 19, 2021) (negative multiplier supported an award of 30 percent of the settlement fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (approving fee award of 33 1/3% of the common fund where it was significantly less than the asserted lodestar).

**1. The Results Achieved**

Under the first factor, "the overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (citation omitted). The resolution Class Counsel secured here recovers nearly 25% of Plaintiffs' preliminary estimated price premium damages based on consultation with experts experienced in similar litigation. "Far lesser results (with 20% recovery of damages or less) have justified upward departures from the 25% benchmark." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065 at *3 n.14 (N.D. Cal. Dec. 6, 2017). The percentage recovery here falls within or exceeds the typical range of recoveries in similar cases. *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 597 (N.D. Cal. 2020) (internal quotations omitted) (finding a "$6.5 million settlement amount, which represents 7.4% of estimated damages based on a nationwide class falls within the range of reasonableness in light of the risks and costs of litigation); *Villanueva v. Morpho Detection, Inc*, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (finding approximately 24% of maximum recovery reasonable). This factor warrants an upward adjustment from the 25% benchmark.

**2. The Litigation Risks**

The risks Class Counsel faced in this litigation were substantial. Natera vigorously disputed liability and maintained that neither Plaintiffs nor the Settlement Class suffered any harm or damages. Had the litigation continued, Plaintiffs would have confronted significant risk at the class-certification, summary-judgment, and trial stages. Natera would likely have argued that individualized issues predominate—including variations in the applicable law, differences in class members' exposure to the challenged marketing and in the test-performance and pricing

information available to them, and the difficulty of establishing classwide damages—such that a class could not be certified. *See In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *12 (N.D. Cal. Nov. 12, 2019) (recognizing that plaintiffs would have had to "present a suitable damages model at class certification, survive motions for decertification, and prevail at trial").

Even if a class had been certified, that certification would have remained subject to challenge, including the potential for interlocutory review under Rule 23(f), or the class could have been decertified at a later stage. *See In re Netflix Priv. Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) (the prospect of decertification "weighs in favor of settlement"). The Settlement eliminates these risks by affording Settlement Class Members a certain and immediate recovery. *See Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008).

The evolving science surrounding non-invasive prenatal testing presented further risk. Whether Natera's NIPTs could reliably test for certain chromosomal conditions and whether they were improperly advertised would have been sharply contested, resulting in a battle of the experts with an uncertain outcome before a jury. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2024 WL 1122420, at *4 (N.D. Cal. Mar. 14, 2024) (finding settlement reasonable where "there would also have been a battle of the experts"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("difficulties in proving the case" favored settlement approval). The Court finds that these substantial and uncertain risks weigh in favor of an upward adjustment from the 25% benchmark.

**3. The Skill Required and Quality of Work by Counsel**

Prosecuting this case against highly capable defense counsel required Class Counsel to be skilled and dedicated, as reflected by the positive result achieved for the Settlement Class. That this action was vigorously litigated weighs in favor of an upward adjustment. *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *12 (granting 30% and citing the results achieved despite weaknesses in plaintiffs' case as a testament to counsel's skill and capacity). Class Counsel also incurred more than $3.1 million in attorney time and $200,051.97 in out-of-pocket expenses, with no

guarantee of receiving payment. *See Vizcaino*, 290 F.3d at 1050 (finding that the litigation entailed significant expenses was a relevant consideration supporting an upward adjustment).

**4. The Contingent Nature of the Fee**

Class Counsel litigated this case on an entirely contingent basis, with no assurances of recovery. Courts have recognized that the public interest is served by compensating counsel who assume representation on a contingent basis. *In re Lidoderm Antitrust Litig*., 2018 WL 4620695, at *3 (N.D. Cal. Sept. 20, 2018). Because most class actions are litigated on a contingency basis, however, this factor does not weigh in favor of an award above the 25% benchmark.

**5. Awards in Similar Cases**

A fee award of 30% of the Settlement Fund is within the range of awards in this Circuit. *In re Lenovo Adware Litig*., 2019 WL 1791420, at *7–9 (N.D. Cal. Apr. 24, 2019) (30% of $8,300,000 recovery); *Larsen*, 2014 WL 3404531, at *9 (citing numerous cases awarding fees of 32% or greater); *Schneider*, 336 F.R.D. at 601 (awarding 30% of a $6.5 million dollar settlement); *Vasquez*, 266 F.R.D. at 491 (E.D. Cal. 2010) (approving fee award of 33 1/3% of the common fund); *Hendricks v. Starkist Co*, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016), aff'd sub nom. *Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018) (finding 30% upward departure appropriate given the "favorable settlement, the substantial risks of litigation, and the financial burden assumed."); *In re Nexus 6P Prods. Liab. Litig*., 2019 WL 6622842, at *13 ("Plaintiffs' request for a 30% fee falls within the usual range of common fund cases"); *Weeks v. Kellogg Co*., 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) (awarding 30%).

***

In sum, the relevant factors under the percentage-of-fee analysis support the requested fee award of 30% of the Settlement Fund.

**B. The Lodestar Method Supports the Requested Fees**

The lodestar method is calculated by multiplying the hours reasonably spent by reasonable hourly rates. *Bluetooth*, 654 F.3d at 941. "There is a strong presumption that the lodestar is a reasonable fee." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). Through the Court's

December 8, 2025 Order Granting Preliminary Approval, Class Counsel spent 4,300 hours prosecuting this litigation with a resulting lodestar of $3,108,507.50. Class Counsel's requested $2,475,000 fee award would be at most 80% of their lodestar. A "negative multiplier" such as this "suggests that the fee request is reasonable." *Smith v. Keurig Green Mountain, Inc.*, 2023 WL 2250264, at *10 (N.D. Cal. Feb. 27, 2023); *see also Ramirez v. TransUnion, LLC*, 2022 WL 17722395, at *10 (N.D. Cal. Dec. 15, 2022) (negative multiplier "strongly suggests the reasonableness" of the fee) (quotation omitted); *In re DRAM Antitrust Litig.*, 2013 WL 12387371, at *12–13 (N.D. Cal. Nov. 5, 2013) (observing that a negative multiplier "is virtually sufficient to satisfy the cross-check requirement"). Both the number of hours spent and Class Counsel's hourly rates are reasonable.

Class Counsel had to spend substantial time on motion practice and discovery in this complicated class action. That time was reasonable in light of the matter's complexity and the course of the proceedings. Over more than three years, Class Counsel conducted an extensive pre-suit investigation, drafted consolidated and amended complaints, briefed and largely prevailed on Natera's motion to dismiss, reviewed the approximately 27,000 documents Natera produced, propounded and negotiated written discovery, litigated multiple discovery disputes, retained and consulted with subject-matter and damages experts, and prepared for and participated in two full-day mediation sessions. Class Counsel represent that they maintained contemporaneous time records and exercised billing judgment to exclude duplicative or unnecessary time, and the Court finds that the hours expended were reasonably necessary to achieve the result obtained for the Settlement Class.

Moreover, the hours reflected here were incurred only through December 8, 2025, the date of preliminary approval, and do not include the substantial additional time Class Counsel have devoted since that date, including overseeing the Notice Plan and the supplemental notice plan. The reported lodestar is therefore conservative, and the resulting negative multiplier is even larger, further confirming the reasonableness of the requested fee.

Class Counsel's current rates range from: $800 to $1,500 for partners (with over 97% of partner hours billed at a rate of $1,250 or less); $425 to $750 for associates; $450 to $900 for staff attorneys; and $250 to $525 for litigation support staff. Class Counsel set an hourly cap of $450 for document review work. These rates are consistent with rates approved in complex class actions throughout this District. *E.g.*, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 3006647, at *2 (N.D. Cal. Oct. 27, 2025) (approving rates of $525 to $1,500 for partners, $240 to $950 for associates); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 11820531, at *2 (N.D. Cal. Dec. 18, 2023) (approving rates ranging from $300 to $1,050 for attorneys); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving partner rates up to $1,195, associate rates up to $850, $425 for contract attorneys, and $325 for paralegals); *Ramirez,* 2022 WL 17722395, at *9 (finding hourly rates ranging from $1,325 to $455 to be "generally in line with rates prevailing in this community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *8 (N.D. Cal. Feb. 3, 2022) (approving attorney rates between $300 and $1,105).

The lodestar in this case has been calculated using current billing rates, which courts in this district have recognized as appropriate "'to account for the delay . . . in receiving payment.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *7 (N.D. Cal. Aug. 3, 2016) (citing *Fischel v. Equitable Life Assur. Soc.*, 307 F.3d 997 (9th Cir. 2002)); *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) ("'attorneys in common fund cases must be compensated for any delay in payment'" and directing the district court to use current rates or a rate enhancement on remand) (quoting *Fischel*, 307 F.3d at 1010). The use of current rates therefore supports a finding of reasonableness.

***

Thus, regardless of the approach to analyzing Class Counsel's requested fee award, a lodestar crosscheck supports the reasonableness of the request.

## II. THE REQUESTED EXPENSES ARE REASONABLE

It is axiomatic that "Class counsel is entitled to reimbursement of reasonable expenses." *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc*., 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024), *appeal dismissed*, No. 24-7650, 2025 WL 1703624 (9th Cir. Apr. 3, 2025) (citing Fed. R. Civ. P. 23(h)); *In re High-Tech Emp. Antitrust Litig*, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) ("In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense.") (citing *Vincent v. Hughes Air W., Inc*., 557 F.2d 759, 769 (9th Cir. 1977)). Class Counsel request the reimbursement of unreimbursed out-of-pocket expenses in the amount of $200,051.97.

The expense reimbursement request is reasonable for this case. Expenses of this magnitude are common in litigation. *See Schneider*, 336 F.R.D. at 591, 602 (granting $636,556.28 in out-of-pocket costs, including costs advanced in connection with experts, legal research, travel, copying and mailing, for the costs of notice administration associated with class certification, and other customary litigation expenses); *Carlin v. DairyAmerica, Inc*., 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (granting $823,904.04 in unreimbursed expenses).

Furthermore, the categories of expenses for which Class Counsel seek reimbursement are the types routinely charged to clients and should be reimbursed. *See High-Tech*, 2015 WL 5158730, at *16 (awarding costs for (1) expert witness fees; (2) mediators' fees; (3) document review; (4) electronic research; (5) copying, mailing, and serving documents; and (6) case-related travel); *In re Capacitors Antitrust Litig*., 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs.").

The Court therefore grants Class Counsel's request for $200,051.97 in out-of-pocket expenses.

## III. THE REQUESTED SERVICE AWARDS ARE REASONABLE

Class Counsel request a Service Award of $10,000 for each of the Class Representatives ($80,000 in total). For the reasons below, the Court finds that a Service Award of $7,500 for each

Class Representative ($60,000 in total, which is 0.73% of the total value of the Settlement) is reasonable. *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 365 (E.D. Cal. 2014) (approving a service award of 1% of the common fund); *Knapp v. Art.com, Inc*., 283 F. Supp. 3d 823, 839 (N.D. Cal. 2017) (granting a service award comprising 1.25% of the settlement fund). In this Circuit, $5,000 is the presumptively reasonable service award. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."); *Louangamath v. Spectranetics Corp.*, 2023 WL 3579319, at *1 (N.D. Cal. Feb. 16, 2023). An award above that figure is warranted where the record establishes a genuine risk of workplace retaliation, as in labor and employment actions, or that the class representative bore the laboring oar in discovery. Neither showing is made on this record.

The record instead shows that the Class Representatives communicated regularly with counsel and worked with their medical providers to obtain records. In disclosing their private medical information, they revisited difficult personal experiences and faced the prospect of personal and reputational consequences, including stigma and criticism. This effort was undertaken with no personal benefit beyond what was provided to the Settlement Class as a whole. *Georgino v. Sur la Table, Inc.*, 2013 WL 12122430, at *28 (C.D. Cal. May 9, 2013) ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that she would receive as an ordinary class member."). The Court credits these contributions and does not minimize the personal difficulty they entailed. They do not, however, reflect the risk of retaliation or the extraordinary discovery burden that has supported service awards above the benchmark.

The increase above $5,000 rests instead on inflation. *Harris* was decided in February 2012, and $5,000 in February 2012 has the same buying power as approximately $7,300 today. *See* Bureau of Labor Statistics, CPI Inflation Calculator, www.bls.gov/data/inflation_calculator.htm (comparing February 2012 with July 2026, the most recent month for which the Consumer Price Index has been published); *Louangamath*, 2023 WL 3579319, at *1 n.2 ("At some point, the common law will have to reckon with inflation.")The $7,500 Service Award is therefore an

approximate inflation-adjusted equivalent of the $5,000 benchmark rather than an upward departure from it, and it is well within the range of awards approved in comparable cases. *See, e.g., Willner v. Manpower Inc.*, 2015 WL 3863625, at *1, *9 (N.D. Cal. June 22, 2015) (granting a $7,500 award from an $8.75 million settlement fund); *Rollins v. Dignity Health*, 2022 WL 20184568, at *9 (N.D. Cal. July 15, 2022) (approving a $10,000 service award); *Terraza*, 2021 WL 11607173, at *4 (same); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335–36 (N.D. Cal. Oct. 22, 2014) (same); *Louangamath*, 2023 WL 3579319, at *2 (approving a $10,000 award for named plaintiff's time and effort and "the risks she took on behalf of her fellow class members").

## IV. CONCLUSION

For the foregoing reasons, the Court grants Class Counsel's request for an award of attorneys' fees in the amount of 30% of the Settlement Fund plus interest accrued on the amount.

The Court withholds 10% of the attorneys' fees awarded until after the post-distribution accounting has been filed and approved by the Court.

Class Counsel are awarded $200,051.97 in litigation expenses.

Class Representatives are each awarded a Service Award of $7,500 ($60,000 total).

**IT IS SO ORDERED**.

Date: September 3, 2026

HON. JON S. TIGAR
UNITED STATES DISTRICT COURT JUDGE